RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

RONALD D. MELL, SR.,

　　　　　　　　　　　　　　*Plaintiff*,

ESTATE OF FRIEDA M. WILMES; ROBERT K.
ESPEL; and JAMES C. MATACIA, on Behalf of
Themselves and All Others Similarly
Situated,

　　　　　　　　　　　*Plaintiffs-Appellants*,

　　　　*v.*

ANTHEM, INC., nka WellPoint, Inc.; ANTHEM
INSURANCE COMPANIES, INC.; COMMUNITY
INSURANCE COMPANY, fka Community
Mutual Insurance Company; and THE CITY OF
CINCINNATI, OHIO,

　　　　　　　　　　*Defendants-Appellees*.

No. 10-3440

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00715—S. Arthur Spiegel, District Judge.

Argued: January 20, 2012

Decided and Filed: July 25, 2012

Before: SILER, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Eric H. Zagrans, ZAGRANS LAW FIRM, LLC, Elyria, Ohio, for
Appellants. Peter R. Bisio, HOGAN LOVELLS US LLP, Washington, D.C., Terrance
A. Nestor, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellees. **ON BRIEF:**
Eric H. Zagrans, ZAGRANS LAW FIRM, LLC, Elyria, Ohio, Alphonse A.
Gerhardstein, GERHARDSTEIN & BRANCH CO., L.P.A. for Appellants. Peter R.
Bisio, Craig A. Hoover, Adam K. Levin, HOGAN LOVELLS US LLP, Washington,
D.C., Glenn V. Whitaker, VORYS, SATER, SEYMOUR and PEASE LLP, Cincinnati,
Ohio, Paul A. Wolfla, BAKER & DANIELS LLP, Indianapolis, Indiana, Robert N.
Webner, VORYS, SATER, SEYMOUR and PEASE LLP, Columbus, Ohio, Terrance
A. Nestor, CITY SOLICITOR'S OFFICE, Cincinnati, Ohio, for Appellees.

––––––––––––––––

**OPINION**

––––––––––––––––

CLAY, Circuit Judge.   Plaintiffs, the Estate of Frieda M. Wilmes through its appointed fiduciary, Claudette Schenck, Robert K. Espel, and James C. Matacia (collectively "Plaintiffs"), on behalf of themselves and all other similarly-situated employees and retirees, appeal the district court's order granting summary judgment to Defendants Anthem, Inc., Anthem Insurance Companies, Inc., Community Insurance Company, and the City of Cincinnati (collectively "Defendants") pursuant to Fed. R. Civ. P. 56.  Plaintiffs seek to recover funds they alleged were owed to them when Anthem Insurance Companies, Inc. demutualized in 2001 and issued 870,021 shares of stock to the City of Cincinnati, Plaintiffs' employer, instead of to Plaintiffs.

For the reasons set forth below, we **AFFIRM** the decision of the district court.

**BACKGROUND**

**I.     Procedural History**

On October 15, 2008, Plaintiffs filed a complaint to recover on behalf of themselves and all other similarly-situated employees and retirees of the City of Cincinnati, Ohio (the "City") the current value of the 870,021 shares of Anthem common stock that the City received from the demutualization of Anthem Insurance.[1]  In their complaint, Plaintiffs asserted eight claims for breach of contract and four tort claims against Anthem, Inc. n/k/a WellPoint Inc., Anthem Insurance Companies, Inc. ("Anthem Insurance") and Community Insurance Company ("CIC") (collectively, "Anthem").[2]

––––––––––––––––

[1]Demutualization refers to the process of converting an insurance company from mutual ownership to stock ownership. *3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 39:43 (3d ed. 2005).*  In the case of Anthem, the company demutualized in 2001, converting Anthem Insurance from an Indiana mutual insurance company to an Indiana stock company.

[2]In 2004, Anthem, Inc. merged with WellPoint, Inc.

In addition, Plaintiffs brought three breach of contract claims and four tort claims against the City.

On September 1, 2009, Plaintiffs filed a motion for class certification. The district court granted Plaintiffs' motion and certified the proposed class. The class consists of 2,536 employees and retirees of the City who were named as insured persons, or former members of a group of insured persons, covered under a health care group policy from June 18, 2001 through November 2, 2001. The class includes two subsets: "Class A" members were defined as individuals who had an insurance policy with Anthem prior to the merger between Community Mutual Insurance Company ("CMIC") and Anthem in 1995; and "Class B" members were defined as individuals who received a health insurance group policy after the 1995 merger. The district court designated Schenck, Espel, and Matacia to serve as the class representatives of both classes.

The parties proceeded to discovery, after which they filed cross motions for summary judgment. On March 3, 2010, the district court denied Plaintiffs' motion for summary judgment; granted Anthem's cross-motion for summary judgment; granted in part the City's cross-motion for summary judgment; and dismissed the case. Plaintiffs timely appealed.

We have jurisdiction pursuant to the Class Action Fairness Act of 2005, which extends the diversity jurisdiction of the federal courts to certain class actions.[3] *See* 28 U.S.C. § 1332(d). We also have appellate jurisdiction under 28 U.S.C. § 1291.

---

[3]Under the Class Action Fairness Act of 2005, a federal district court may have original jurisdiction of:

> any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state. Pub. L. No. 109-2, 119 Stat. 4 (2005).

In this case, the amount in controversy exceeds $5,000,000 and the parties are citizens of diverse states. *See* (R.1: Compl. ¶¶1–3.)

## II.   Factual Background

### A.   The City of Cincinnati's Group Health Care Benefits

In 1986, the City of Cincinnati entered into a Master Group Contract for various group health care benefits with CMIC, a mutual insurance company licensed by Ohio Blue Cross/Blue Shield  ("BC/BS").  The Master Group Contract covered both active and retired employees and included such benefits as medical, hospitalization, and, in the case of firefighters, dental coverage.  According to the declaration of Andrea Schell, Regional Vice President of Group Underwriting for CMIC, the Master Group Contract granted the City mutual company membership interests (voting and equity rights) in CMIC.  Section 1.01 of the CMIC bylaws defined the members of the group insurance plan and stated in relevant part:

> Every policyholder of the corporation, except the holder of a policy or contract of reinsurance, is a member of the corporation while the policy is in force, and is entitled to one vote, and no more, regardless of the amount of insurance held by such policyholder, the number of policies in force in the name of such policyholder or the amount of premiums paid by such policyholder. Policyholder means the person or group of persons identified as the named insured in the declarations page of a policy of insurance of the corporation. . . . In the case of a master contract for group insurance, the member shall be the holder of the master policy, and the holder of any certificate or contract issued subordinate to such master policy shall not be a member unless it makes specific provision of such membership. . . .

(R.32-2: Ex. B. CMIC Bylaws § 1.01.)  Schell stated that the City's group contract was "renewed each year between 1986 and 1999."

### B.   The Formation of Anthem Insurance

Anthem Insurance's predecessor was Associated Insurance Companies, Inc. ("Associated"), an Indiana mutual insurance company.  In the early 1990s, Associated began acquiring BC/BS licenses in Kentucky (1993) and Ohio (1995). The Ohio BC/BS licensee that was acquired on October 1, 1995 was CMIC.  At the time of the 1995 merger between CMIC and Associated, CMIC members received the following:

(A) An assumption certificate from [CIC] . . . that shall provide to [CMIC members] the same medical and health benefits in effect immediately prior to the Effective Time under the terms and conditions of the [CMIC's] insurance policy or health care benefits contract, as the case may be; and

(B) A new Associated guaranty insurance policy/membership certificate which shall grant to that [CMIC member] the following rights:

> (1) voting rights on all matters that come before the members of an Indiana domestic mutual insurance company under the Indiana Insurance Law . . . ;

> (2) insurance benefits which shall guarantee the benefits granted under the insurance policy or health care benefits contracts assumed by CIC; and

> (3) rights in the events of liquidation, merger, consolidation, or demutualization of Associated as set herein, therein and in Associated's Second Amended and Restated Articles of Incorporation, which rights are intended to be equivalent to the rights such [CMIC member] would have had if such [CMIC member] had owned an insurance policy, issued directly by Associated. . . .

(R.31-23: PTX-20, Page ID # 1560.)

CMIC and Associated jointly petitioned the Ohio Department of Insurance ("Ohio DOI") for approval of the merger. Both companies disclosed to the Ohio DOI that the employers that previously purchased group policies, and not the employees receiving benefits under those policies, were CMIC members. Associated incorporated into the merger agreement a "grandfather" clause which allowed former CMIC members to maintain their membership rights as long as each "grandfathered group" renewed, amended, or replaced its group policy without a lapse in coverage. New customers or those who entered into the contract after the merger would not become members. The joint petition between CMIC and Associated stated the following:

Group policyholders of [CMIC] . . . are members of [CMIC] and are entitled to one vote on all matters submitted to a vote of the members of CMIC. Group policyholders of [CMIC] also possess certain proprietary rights in CMIC. *The holders of certificates of benefits issued under*

> *[CMIC's] group polices are not members of [CMIC], are not entitled to vote and do not have proprietary rights in [CMIC].*
>
> *In order to preserve the existing voting and proprietary rights of [CMIC's] group policyholders*, Associated general practice regarding voting and other membership rights relating to group policies will not apply to holders of group polices issued by [CMIC]. *Instead, group holders of Guaranty Policies issued as part of the Merger will be treated as members of Associated and will have membership rights in Associated. . . .*

(R.31-16: PTX-12, Page ID # 1497) (emphasis added).

According to the terms of the merger agreement, the City received a Group Guaranty Policy, which confirmed that it was a member of Associated, and the policy also indicated that City employees who obtained coverage as enrollees in the City's group policy were not members of nor had equity rights in Associated. The Ohio DOI approved the merger and the agreement became effective on October 1, 1995. After the merger, Associated changed its name to Anthem Insurance Companies, Inc.

## C.        The Demutualization of Anthem Insurance

In 2001, Anthem developed a Plan of Conversion to convert Anthem Insurance from an Indiana mutual insurance company to an Indiana stock insurance company in accordance with Indiana demutualization law under Indiana Code §27-15-1-1, *et seq*. Anthem decided to demutualize in order to increase the company's financial flexibility through improved access to capital. Under the Indiana Demutualization Law, Anthem was required to provide consideration, either in the form of cash or stock, to its eligible statutory members in exchange for their membership interests. During this process, Anthem retained both financial and legal advisors as well as other experts to provide assistance in executing the conversion plan.

On May 18, 2001, Anthem notified the Ohio DOI, as required under Ohio Rev. Code § 3941.38, of its plan to convert to an Indiana stock insurance company. Anthem also submitted a Form D Filing to the Ohio DOI, which notified the Ohio DOI of its intent to (1) "discontinue the issuance of any new Guaranty Policies after the effective date of Conversion;" and (2) "cause all issued Guaranty Policies to expire at their

anniversary next following the effective date of the Conversion," which would extinguish all membership interests. (R.32-18: Ex. A. Dec. of Marjorie Maginn.)  On September 14, 2001, the Ohio DOI approved Anthem's demutualization request.

Anthem Insurance's board of directors approved a conversion plan in accordance with Indiana demutualization law on June 18, 2001. *See* Ind. Code Ann. § 27-15-2. Anthem submitted its plan for approval to the Indiana Department of Insurance ("Indiana DOI").  The Indiana DOI conducted a full review of Anthem's proposed demutualization, which included a determination of whether particular group policyholders were eligible to retain their membership interests under a "grandfather" clause and therefore become classified as statutory members of Anthem Insurance. Anthem also participated in a public hearing on October 2, 2001 to discuss its conversion plan.  Anthem explained at the hearing that individual enrollees in group polices issued by Anthem's Ohio subsidiary prior to the 1995 merger were not eligible statutory members and therefore were not entitled to Anthem's demutualization proceeds.  Article XIII of Anthem's Plan of Conversion defined both Statutory and Eligible Statutory members as follows:

> "Statutory Member" shall mean as of any specified date any Person who, in accordance with the records, articles of incorporation and by-laws of Anthem Insurance, is the Holder of an In Force Policy.

> "Eligible Statutory Members" shall mean a Person who (a) is a Statutory Member of Anthem Insurance on the Adoption Date and continues to be a Statutory Member of Anthem Insurance on the Effective Date,[4] and (b) has had continuous health care benefits coverage with the same company during the period between those two dates under any Policy or Policies without a break of more than one day.

(R.32-11: Plan of Conversion, Page ID# 2676–77.)  No objections to Anthem's position were raised at the public hearing.

On October 25, 2001, the Indiana DOI published its Findings of Fact, Conclusions of Law, and Order, which found that Anthem complied with the

---

[4] The term "Adoption Date" is defined in the Plan of Conversation as June 18, 2001.  The "Effective Date" of the Plan of Conversation was November 2, 2001.

requirements set forth under the Indiana demutualization law.   The Indiana DOI approved Anthem's Plan of Conversion on October 29, 2001.  That same day a majority of Anthem's Statutory Members also voted to approve and adopt the conversion plan. Anthem's demutualization became effective on November 2, 2001, and on that day, Anthem issued 870,021 shares of its common stock to the City.  Upon receipt of the shares of the stock from the demutualization, the City disposed of its shares on the public market and received $55 million.  The City used the proceeds to fund a variety of city projects.

On October 15, 2008, Plaintiffs filed this action claiming that the City was not entitled to the $55 million demutualization proceeds and are now seeking to recover that amount.

## DISCUSSION

### I.        Standard of Review

We review a district court's grant of summary judgment *de novo*.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008).   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the nonmoving party." *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574, 587 (1986)).

### II.       The City was the policyholder of the Group Policy prior to the 1995 merger between CMIC and Associated and possessed grandfather rights as the policyholder after the merger

Plaintiffs argue that the district court erred in concluding that the City obtained rights and interests of the health insurance group policy ("Group Policy") through a "grandfather" clause placed in the pre-merger agreement between CMIC and Associated. Plaintiffs contend that the City was therefore not entitled to receive any proceeds or

compensation from the 2001 demutualization of Anthem. Plaintiffs argue that under Ohio insurance law, Ohio Revised Code §§ 3913.22(A) and 3913.20(B), the City was not "named as the insured" or the "policyholder" of the Group Policy because, according to Plaintiffs, "[a] municipality has no health of its own to insure." Plaintiffs assert that only active and retired employees and their dependents may serve as the "named insureds" or "insureds" or policyholder under the Group Policy. We first address the issue of whether the City was the policyholder of CMIC for purposes of obtaining membership rights under the Group Policy.

The district court correctly held that the statutory definition prohibits Plaintiffs from being classified as an owner of the Group Policy. Under Ohio insurance law § 3913.20(B), a policyholder is defined as the "person, group of persons, association, corporation, partnership, or other entity named as the insured under a mutual policy of insurance other than life . . . ." The district court interpreted the statute to mean that policyholders are typically "owners" of the group policy. The district court therefore found that Plaintiffs cannot be the owners of the group policy because as employees and retirees Plaintiffs "had nothing to do with the choice of insurance carrier, nor with its governance, and they received what they bargained with the City to get: insurance coverage." *Mell v. Anthem, Inc.*, No. 1:08-cv-00715, 2010 WL 796751, at *10 (S.D. Ohio Mar. 3, 2010). Moreover, the district court noted that the record provides no evidence that the Group Policy named Plaintiffs as the policyholders of the Group Policy.

Plaintiffs' argument is also incompatible with CMIC's bylaws, which adopted the policyholder definition found under Ohio insurance law. According to CMIC's bylaws, a member was defined as "[e]very policyholder of the corporation" and the "[p]olicyholder means the person or group of persons identified as the named insured in the declarations page of a policy of insurance of the corporation." In the case of the Master Group Contract, the City as the member "shall be the holder of the master policy." CMIC's By-Laws, art I. § 101. The plain language of the bylaws therefore supports the conclusion that even prior to the 1995 merger between CMIC and

Associated, the City became a policyholder of the Group Policy by virtue of its contract with CMIC. Under Ohio law, "[t]he words in a policy must be given their plain and ordinary meanings, and only where a contract of insurance is ambiguous and therefore susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks coverage." *Burris v. Grange Mut. Cos.*, 546 N.E.2d 83, 88 (Ohio 1989), overruled on other grounds by *Savoie v. Grange Mut. Ins. Co.*, 620 N.E.2d 809 (Ohio 1993). No ambiguity exists in the instant case. Based on a straightforward reading of the statutory language and CMIC's bylaws, Plaintiffs did not possess, nor could they have possessed, any membership interests in Anthem.

Plaintiffs attempt to insert themselves into the contract by arguing that as "named insureds" or "insureds" they became the "policyholders." However, the Master Group Contract in effect established a contractual agreement between the City and CMIC, with Plaintiffs as mere beneficiaries. As beneficiaries, Plaintiffs enjoyed the right to participate in the insurance provided, under the terms and conditions imposed by the Group Policy. Thus, any references to the "named insured" or "insured" simply meant a person covered under a group policy who is entitled to insurance as a benefit of his/her employment. It does not signify the position of policyholder.[5]

To the extent that Plaintiffs argue that an agency relationship exists between CMIC and the employees and retirees, Plaintiffs' argument misconstrues the Ohio statutory language and CMIC's bylaws. Under Ohio law, "[a]n employer's administration of a group insurance plan does not create an agency relationship between the employer and the insurance carrier since the employer is acting only for the benefit of its employees and the employer's own benefit in promoting better relations between itself and its employees." *Kilbourn v. Henderson*, 577 N.E.2d 1132, 1136 (Ohio Ct. App. 1989) (citing *Hroblak v. Metro. Life Ins. Co.*, 79 N.E.2d 360, 364 (Ohio Ct. App. 1947)).

---

[5]Plaintiffs also claim that the Ohio Health Insurance Guide has adopted the logic that an employer may not be a policyholder. Plaintiffs highlight that the guide defines the term "certificate holder" as "[a]n employee or other insured named under a group health insurance policy" to suggest that the policyholders are the covered employees and insured retirees. (R.31-28: PTX-99 ODI Health Insurance Guide, Page ID # 1683.) Plaintiffs misread the guide, which explicitly states that "your employer [i.e., the City] or trade association is the master policyholder; you and your fellow employees [i.e., Plaintiffs] are certificate holders." (*Id*. at Page ID # 1634.)

Here, the language of the statute and the bylaws confers an unambiguous contractual relationship between the City and CMIC, so the employee's participation in the Group Policy does not by itself create an agency relationship such that he becomes the policyholder. Plaintiffs' references to unreported Ohio cases and cases outside this Circuit bear no relevance in our analysis and are not controlling authority.[6] Therefore, we are not bound by those decisions. However, the limited authority available on this issue persuades us that the employer and not the employee is the policyholder of an insurance policy. In *Greathouse v. City of East Liverpool*, the Ohio Court of Appeals determined that since the City of East Liverpool purchased health insurance through Anthem on behalf of its employees and exclusively contracted with Anthem, the City and not its employees was therefore the owner of the policy. 823 N.E.2d 539, 544 (Ohio Ct. App. 2004). The City was therefore the policyholder of the Group Policy prior to the 1995 merger between CMIC and Associated. And since the City was the policyholder of the Master Group Contract prior to and through the 1995 merger, the City also preserved and protected its rights as a policyholder through the grandfather clause issued by CMIC before the merger.

### III.     Plaintiffs were not entitled to receive the proceeds from Anthem's demutualization

Plaintiffs argue that they should have received the proceeds from Anthem's demutualization in 2001. Plaintiffs identify "two paths"—Class A and Class B— to show that they are entitled to the demutualization proceeds that are governed by the Ohio demutualization statutes. As we previously stated, "Group A" consisted of the City employees who had full insurance coverage from Anthem at the time of the 1995 merger between Associated and CMIC. Under Plaintiffs' argument that the employees are the

---

[6]We also find unpersuasive Plaintiffs references to Ohio insurance statutes in support of their determination that employees, rather than the employers, are the policyholders of the Group Policy. For example, Ohio Revised Code § 3923.12 on group sickness and accident insurance states that the "insurer will furnish to the policyholder, for delivery to each employee or member of the insured group, an individual certificate." Under this provision, CMIC as the insurer furnished to the City, the policyholder, an individual certificate for the employer to furnish to the employee (Plaintiffs). The remaining Ohio revised provisions cited by Plaintiffs also do not classify an "insured" as the policyholder of a Group Policy, but rather the "insured" is defined as the person covered under the Group Policy. *See* Ohio Rev. Code §§ 3923.13, 3912.121, 3923.123, 3923.381, 3923.38, 3923.44.

policyholders, Plaintiffs contend that the employees in Group A had "grandfathered" rights preserved and guaranteed under Ohio law that would allow them to receive the payments from the 2001 demutualization. Plaintiffs argue that Class members in Group B, who obtained full-coverage from Anthem after the 1995 merger, were entitled to demutualization compensation under Ohio law and Anthem's membership rules where the employee and not the employer is the member of the mutual company. Given our finding that employees are not policyholders, Plaintiffs argument with respect to Group A fails. Because Group A members were not policyholders, they accordingly were not covered under the grandfathered clause exception and were not entitled to the demutualization proceeds.

The analysis with respect to Group B members is more complicated. For Group B members—employees who obtained full-coverage from Anthem after the 1995 merger—Plaintiffs claim that the provisions in the 1995 merger agreements and related documents specified that Plaintiffs were entitled to equity rights at the time of the merger, thereby granting them demutualization compensation. Plaintiffs also argue that they are entitled to the stock proceeds by the addition of a fully-insured human organ transplant ("HOT") rider and Certificates of Membership, which triggered a Certificate of Membership from the City that allowed Plaintiffs to receive the demutualization proceeds.

The evidence in the record does not support Plaintiffs' theory. The record indicates that Anthem intended for the City to maintain membership rights. Anthem prepared different documentation for CMIC grandfathered groups than it prepared for group customers that contracted with Anthem for the first time after the merger. Specifically, for CMIC grandfathered groups, Anthem prepared a Guaranty Policy that confirmed that the policyholders had membership rights. Not only did this Guaranty Policy differentiate between the employer "member" and the employee "enrollee" under the employer's policy, it also explained that "[n]o Enrollee or dependent of an Enrollee shall receive any equity rights by virtue of being an Enrollee or dependent of an Enrollee."

In contrast, Anthem did not make a distinction between "members" and "enrollees" in the guaranty policies prepared for Plaintiffs' Group B members. Rather, those guaranty policies defined a "member" as "each person who has enrolled for insurance of health care benefits and who was eligible to enroll for such benefits under the Community Contract because of the person's status as an employer of the Policyholder, if the Policyholder is an employer." Post-merger enrollees received a Certificate of Membership for purposes of defining the enrollees whereas the grandfathered groups received a Summary of Benefits. However, the presence or absence of a certificate does not change the underlying facts that dictated the membership determinations made in connection with the CMIC/Associated merger and the Anthem demutualization. The record established that the Certificates of Membership did not by themselves create membership rights and are not relevant for membership determinations. *See,* e.g., *Talley v. Teamsters, Chauffers, Warehousemen, and Helpers, Local No. 377, et al.*, 357 N.E.2d 44, 46 (Ohio 1976) ("It is generally held that the certificate of coverage merely evidences the employee-member's right to participate . . . [and] [c]onsequently, the provisions of the group policy are controlling over the provisions of the certificate, and the rights of the parties in a group insurance enterprise are dependent upon the group contract.").

The district court properly concluded that Plaintiffs' interpretation of the merger document for Class B members is incorrect. The district court found that the merger document does not state that new insurance is the "triggering event." *Mell*, 2010 WL 796751, at *10. The merger document states in pertinent part:

> The Associated guaranty insurance policy/membership certificate shall continue in effect as long as (a) the insurance policy or health care benefits contract assumed by CIC pursuant to Clause (A) of this Section 3.1 is in effect, or has been renewed, amended, or replaced, without a lapse in coverage, by any CIC insurance policy or health care benefits contract and (b) the membership fees required . . . are paid when due . . .

(*Id.*) Accordingly, by virtue of the process of demutualization we are compelled to conclude that Plaintiffs are precluded from recovering any of the proceeds from Anthem's demutualization. Based on the reading of the merger documents, it is clear

that Anthem did not create new membership rights for employees enrolled post-merger. Therefore, the Class B members were not eligible policyholders under the Anthem plan and were thus not entitled to receive Anthem's demutualization proceeds.

### IV.     Indiana law governs the demutualization of Anthem

Plaintiffs also improperly apply Ohio law when the demutualization process was governed by Indiana law.[7]   Anthem was an Indiana mutual insurance company at the time of demutualization in 2001 and conducted the demutualization process in compliance with the provisions of Indiana Code § 27-15, which governs the demutualization of Indiana mutual insurance companies. *See Ormond v. Anthem, Inc.*, 799 F. Supp. 2d 910, 912 (S.D. Ind., 2011) (stating that Indiana law allows "an Indiana mutual insurance company to convert to a stock company through a plan of conversion"); *see also 3 Russ & Segalla, Couch on Insurance § 39:43 (3d ed. 2005).* As required by Indiana law, Anthem submitted documentation of its plan to demutualize and also held a public hearing. Anthem's demutualization process was then approved by the Indiana DOI, which recognized that  the City was an "eligible member" to receive the proceeds from the demutualization. *See* Ind. Code Ann. § 27-15-2-2.

To now apply Ohio law would disrupt the entire demutualization process in which the Indiana demutualization law vested exclusive authority in the Indiana DOI to approve the conversion plan. If this Court were to adopt Plaintiffs' argument that Ohio demutualization law applied, Anthem's entire application for conversion would be discredited. It also would undo the 1995 merger agreement. Under the 1995 agreement, Anthem, an Indiana based mutual insurance company, acquired CMIC, which was an Ohio insurance company. At no point did Anthem become subject to Ohio law. As a result of the merger, all of the mutual company members of the Ohio company became mutual company members of the Indiana company with voting and equity interests in the Indiana company. After the merger, what remained in Ohio was an Ohio stock insurance company, not an Ohio mutual insurance company. Under Indiana

---

[7]We also note that Plaintiffs' attorney conceded at oral argument that Indiana law governed the demutualization of Anthem in 2001.

demutualization law,  however, the City, as the eligible statutory member, was entitled to the demutualization proceeds.   *See* Ind. Code Ann. § 27-15-1-7.

## CONCLUSION

Despite Plaintiffs' multiple theories suggesting that they are entitled to the Anthem demutualization proceeds, Plaintiffs cannot recover any of the demutualization compensation.   The evidence in the record indicates that the City was the policyholder prior to the 1995 merger between CMIC and Associated. The documents also clearly establish that the City maintained its policyholder rights post-merger through a grandfather clause, including any rights to the demutualization proceeds.   The 2001 demutualization process did not disrupt the City's membership interests nor did it confer any equity rights to Plaintiffs.   Thus, Plaintiffs are not entitled to the demutualization proceeds.

For the foregoing reasons we **AFFIRM** the district court's order granting summary judgment to Defendants.