NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0513n.06

**Nos. 13-3832, 13-3837**

FILED
Jul 15, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

IMG WORLDWIDE, INC.; IMG ACADEMIES,
LLP,

      **Plaintiffs-Appellees/Cross-Appellants,**

**v.**

WESTCHESTER FIRE INSURANCE
COMPANY,

      **Defendant-Appellant/Cross-Appellee,**

**and**

GREAT DIVIDE INSURANCE COMPANY,

      **Intervenor-Appellee.**

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

**BEFORE:** KEITH, CLAY, and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.** In this insurance coverage case, both parties appeal the order of the district court finding in favor of Defendant Westchester Fire Insurance Company ("Westchester") as to the claim that Westchester breached its contractual duty to defend Plaintiffs IMG Worldwide, Inc. and IMG Academies, LLP (collectively, "IMG") in connection with a lawsuit, and upholding a jury verdict in favor of IMG as to the claim that Westchester breached its contractual duty to indemnify IMG for a payment made to settle that same lawsuit. For the reasons set forth below, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the district court for further proceedings.

## BACKGROUND

*Procedural History*

IMG filed this insurance coverage action against its excess insurer, Westchester, on August 2, 2011, alleging that Westchester breached the parties' commercial general liability ("CGL") insurance agreement by refusing to indemnify IMG for a settlement payment made, and defense costs incurred, in connection with a lawsuit filed against IMG. The district court entertained numerous pre-trial motions from both parties, and the case ultimately proceeded to a jury trial on the issue of indemnity. The court reserved for post-trial decision the issue of defense costs. After a three-day trial, the jury returned a special verdict in favor of IMG, finding Westchester liable, under the terms of the policy, to indemnify IMG for part of the $5 million settlement payment. In so finding, the jury awarded $3.9 million in damages to IMG.

Westchester immediately challenged the jury verdict in a Rule 50(b) motion for judgment as a matter of law, and also moved for leave to file a third-party complaint against IMG's primary insurer, Great Divide Insurance Company ("Great Divide"). In addition, Westchester moved for a declaratory judgment for reimbursement from Great Divide. Great Divide filed a motion to intervene, which the district court granted. IMG filed a separate motion for judgment on its claim that Westchester is liable for reimbursement of defense costs incurred in connection with the underlying suit.

The district court denied Westchester's Rule 50(b) motion as well as IMG's motion for judgment, upholding the jury verdict in favor of IMG on the indemnification claim, and entering judgment against IMG on the duty-to-defend claim. The court denied as moot Westchester's motions for declaratory judgment and leave to file a third-party complaint against Great Divide.

Westchester appealed the denial of its Rule 50(b) motion, and IMG cross-appealed, challenging the denial of its motion for judgment.

*Factual Background*

IMG purchased a commercial general liability ("CGL") insurance policy (the "Policy") from Westchester, an excess insurance provider. The Policy provides for coverage of up to 25 million dollars in limits, excess of any coverage issued by IMG's primary insurer, Great Divide, for liability resulting from each "occurrence" that causes "property damage." (R. 8-4, Exhibit D, Page ID # 802.) With regard to indemnity, the Policy provides:

> [Westchester] will pay on behalf of [IMG] the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies.

> This insurance applies to 'property damage' . . . caused by an 'occurrence[.]'

(R. 33-3, at 9.) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*, at 23, Page ID# 824.) "Property damage" is defined to include "[l]oss of use of tangible property that is not physically injured." (*Id.*, at 24, Page ID# 825.)

Under the terms of IMG's insurance policies with Great Divide and Westchester, Great Divide is responsible for paying the first one million dollars in damage for each "occurrence," exclusive of defense costs, and Westchester is responsible for anything beyond that threshold, up to a limit of 25 million dollars.

Under the terms of IMG's insurance policies with Great Divide and Westchester, Great Divide is responsible for defending IMG in covered lawsuits; however, Westchester must undertake this obligation under certain circumstances, as discussed *infra*. With regard to the duty to defend, the Policy provides:

[Westchester] will have the right and duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' when the 'underlying insurance' [Great Divide] does not provide coverage or the limits of the 'underlying insurance' [Great Divide] have been exhausted. . . . However, [Westchester] will have no duty to defend [IMG] against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply. . . .

(R. 33-3, at 9.)  In a subsequent section, titled "Conditions," the Policy states:

This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. . . . When this insurance is excess, [Westchester] will have no duty. . . to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'.  If no other insurer defends, [Westchester] will undertake to do so, but [Westchester] will be entitled to the insured's rights against all those other insurers.

(*Id*. at 19.)

On November 25, 2008, a lawsuit was filed against IMG and real estate developers Sunvest Communities USA, LLC, and E.W. Sunvest Development, LLC (collectively "Sunvest") in Florida state court,[1] seeking over three-hundred million dollars in damages for alleged fraud, conversion, civil theft, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  That lawsuit, *Gastaldi, et al v. Sunvest Communities USA, LLC, et al*., No. 08-62076-CIV (S.D. Fla. 2009) (hereinafter, "the *Gastaldi* suit"), stemmed from the failure of a real estate development project in Orlando, Florida.  The plaintiffs, 270 persons who had invested in the project, alleged that Sunvest had sold them undeveloped properties with the promise that they would be upgraded and developed into high end condominiums.  IMG was a "consultant" on the project, and also licensed to Sunvest the use of the IMG name and logo in marketing materials.  IMG did not have any contractual obligation to actually develop the condominiums or the development property, or to finance the project in any way.

---

[1] The matter was subsequently removed to the United States District Court for the Southern District of Florida because of diversity jurisdiction.

4

IMG sought coverage from its primary insurance carrier, Great Divide, and from its excess insurance carrier, Westchester, for defense and indemnity from any judgment in the *Gastaldi* suit. Both carriers denied coverage and refused to provide a defense for IMG.

Approximately one year after the *Gastaldi* suit was originally filed, the plaintiffs dropped the fraud, conversion, and theft claims against IMG, and filed a second amended complaint alleging only violations of the FDUTPA.[2] IMG filed a motion for summary judgment on the FDUTPA claims, arguing that the claims failed as a matter of law because IMG did not make any deceptive representations, and did not cause any damages. The district court denied IMG's motion for summary judgment, finding that there was sufficient evidence to support plaintiff's allegation that IMG had made, or contributed to, two deceptive representations: first, that IMG would build a sports center in the development, and second, that IMG was in a legal partnership with the developers. The court found that IMG may have "contributed to" the misleading impression that it would build an IMG sports center in the development, "however benevolently that contribution may have been made," and also found that IMG "allowed" the developer to refer to their relationship as a partnership. (R. 32-2, at 30.) In denying the motion for summary judgment, the court relied in part on Florida case law providing that a party may violate the FDUTPA if the "'party directly participated in a violation of the FDUTPA, even if that violation was initiated by another.'" (R. 32-2., at 30) (citing *Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.,* 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008,).

IMG ultimately settled the *Gastaldi* case for nearly five million dollars, after having incurred defense costs of over eight million dollars.

---

[2] FDUTPA forbids "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Fla. Stat.§ 501.204(1). "[A] consumer claim for damages under the FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2006).

Following settlement of the *Gastaldi* suit, IMG continued to seek coverage from both Great Divide and Westchester for indemnity and reimbursement of the settlement amount, and reimbursement of the cost of defense.

Great Divide eventually agreed to settle with IMG, and the parties reached an agreement in September 2010. Great Divide agreed to pay IMG $1,250,000, exhausting the one million dollar limit set forth in Great Divide's policy for each "occurrence," and providing $250,000 towards the defense costs. In exchange for this payment, IMG released Great Divide from "any and all Claims based upon or arising out of (1) the *Gastaldi* Action, and (2) [Great Divide's] handling of [IMG's] claims for insurance coverage based upon the *Gastaldi* Action." (R. 146-2.)

Unlike Great Divide, Westchester continued to deny coverage and refused to settle. This lawsuit followed, culminating in a jury trial on the question of coverage.

At trial, IMG presented evidence supporting its position that its payment in the *Gastaldi* suit resolved IMG's potential liability for damages suffered by the *Gastaldi* plaintiffs due to "property damage" resulting from a "loss of use" of the properties they had purchased. IMG also argued that the loss of use of the properties was caused by an "occurrence" as defined in the Policy. IMG's argument throughout the trial, and again at oral argument on the post-trial motions, was that the alleged "occurrence" was a downturn in the economy leading to the developers' abandonment of the project. Westchester, on the other hand, argued that the damages sought by the *Gastaldi* plaintiffs were not "property damage" as that term was defined by the policies, but rather a "loss on investment," which was not covered under the Policy. Westchester also argued that the only possible "occurrence" that could have led to damages attributable to IMG in this case, was the alleged misrepresentation(s) made by IMG in violation of the FDUTPA. As such, Westchester took the position that there was no "occurrence," and

hence no coverage, because under the Policy language and relevant Ohio insurance law, a misrepresentation cannot be an "accident." The court included a jury instruction at trial informing the jury that a "misrepresentation" could not be the "occurrence" triggering coverage under the Policy.[3]

Following deliberations, the jury returned a special verdict form, finding: (1) IMG had proven by a preponderance of the evidence that Westchester breached its contract with IMG by not paying on the Policy; (2) IMG proved by a preponderance of the evidence that there was an "occurrence;" (3) there was "property damage;" and, (4) Westchester had not proven by the requisite burden of proof that the "expected or intended injury" exclusion applied. (R. 110; R. 111.) Accordingly, the jury returned a verdict in favor of IMG, finding that Westchester was liable for breaching its duty to indemnify IMG, and awarding damages to IMG in the amount of $3,900,000 for the *Gastaldi* settlement. (R. 111.) The court retained the question of whether Westchester is also liable for reimbursement of IMG's defense costs over and above the $250,000 contributed by Great Divide in its settlement with IMG.

After trial, the district court denied IMG's motion for judgment on its duty-to-defend claim, ruling that Westchester is not required to reimburse IMG for the defense costs it incurred in connection with the *Gastaldi* suit. The court reasoned that Westchester's obligations: (1) expired when IMG settled with Great Divide; and (2) were conditioned on its retention of subrogation rights allowing it to recover payments from another insurer. (R. 153, at 21.) IMG

---

[3] The jury instruction read as follows:

> If you find that IMG . . . made a misrepresentation to the *Gastaldi* plaintiffs in the marketing or promoting of the . . . real estate project that caused the alleged loss then there can be no "occurrence" or "accident" under the Westchester policies.

(R. 128, at 298, Page ID #4989.)

appeals from this portion of the district court's ruling, and asks this Court to enter judgment in favor of IMG for the undisputed amount of its unreimbursed defense costs in the *Gastaldi* case. Westchester appeals from the district court's denial of its Rule 50(b) motion on the issue of whether Westchester breached its contractual duty to indemnify IMG for the settlement payment made in connection with the *Gastaldi* suit.

## DISCUSSION

### I.   RULE 50(b) MOTION

We review *de novo* a district court's denial of a motion for judgment as a matter of law. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 488 (6th Cir. 2010).

Judgment as a matter of law is appropriate only "[when] there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). In other words, we may only grant a Rule 50 motion "if, when viewing the evidence in a light most favorable to the non-moving party, [and] giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012).

In considering a Rule 50(b) motion, we are required to reconcile the answers a jury gives to interrogatories with the applicable law if possible under any view of the evidence presented in the case. *Waggoner v. Mosti*, 792 F.2d 595, 596–97 (6th Cir. 1986). We may not overturn a jury's verdict unless there is no view of the evidence that would support their decision consistent with the court's instructions. We "must attempt to reconcile the jury's findings, by exegesis if

necessary[ ]. . . before we are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 119 (1963).

Westchester contends that the jury had no legal basis for finding that IMG's liability in the *Gastaldi* suit arose out of an "occurrence" or "property damage," as defined in the Policy. Westchester also argues that even if the alleged "occurrence" and "property damage" could have triggered coverage as a matter of law, IMG failed to produce sufficient evidence at trial to prove that an "occurrence" caused the alleged "property damage," as a matter of fact. We disagree.

1. "Occurrence"

The Policy defines "occurrence" as "an accident." The jury instructions defined an "accident" as "an event that is unexpected, unintended, and fortuitous[,] . . . [which] means happening by chance." (R. 128, at 407.) The jury instructions specified that "there can be no 'occurrence' or 'accident' under the [Policy]" if IMG "made a misrepresentation . . . that caused the alleged loss." (R. 128, at 407.)

Westchester's position that the legal basis for an FDUTPA claim cannot, as a matter of law, be anything other than a party's own intentional misrepresentations is incorrect. The acts giving rise to IMG's potential liability, as identified by the *Gastaldi* court, were not intentional, deceptive acts by IMG. Rather, the *Gastaldi* court recognized that under the case law, and under the facts of the *Gastaldi* case specifically, IMG could potentially be held liable for *unintentionally* "contributing to" a misleading impression that caused damage.[4] The general

---

[4] In one part of that opinion, the *Gastaldi* court found that IMG could potentially be liable under the FDUTPA for "benevolently [contributing to]" the misleading representation that it would build a sports academy in the development, despite the fact that IMG never made such a representation, either intentionally or negligently:

> Despite the absence of representations that IMG[] would literally build or finance the development of an academy, the Plaintiffs have put forth specific facts supporting the proposition that they received "the misleading impression that an [IMG] facility would be located at the [development], and, more importantly, that IMG[] contributed to this impression,

legal principle that liability for misrepresentation does not arise from an "occurrence" or accident assumes a much higher level of culpability, and is not applicable in this case.

We are similarly unconvinced by Westchester's argument that the developers' abandonment of the project cannot be the "occurrence" triggering coverage under the Policy because "it was not in itself *the legal basis* for IMG's liability." The *Gastaldi* suit did not arise out of a straightforward purchase and sale situation where the misrepresentation necessarily caused the damage; there were several stages of causation in this case: at the preliminary stage, IMG may have inadvertently (but not necessarily "negligently") made or contributed to misrepresentations, but the developers' abandonment of the project is what gave rise to the lawsuit. Absent the project's abandonment, IMG's representations would not have "caused damage," as required to state a claim under the FDUTPA. Certainly, it would not have caused the damage alleged by the *Gastaldi* plaintiffs. As IMG argued at trial, the confluence of these events—IMG's unintentional "contributions" to or "approval of" the misrepresentations and the developers' abandonment of the project—was the legal basis for IMG's liability. Moreover, the jury could have found that the confluence of these events was "unexpected, unintended, and fortuitous" such that the lawsuit would be covered under the terms of the Policy. There was ample evidence to support this theory, which IMG sufficiently presented during trial. Accordingly, the district court properly rejected Westchester's Rule 50(b) motion.

---

however benevolently that contribution may have been made, *see Sundance Apts. I, Inc. v. Gen. Elec. Capital Corp.,* 581 F. Supp. 2d 1215, 1222 (S.D. Fla. 2008) ("[U]nder Florida law it is sufficient . . . . that a party directly participated in a violation of the FDUTPA, even if that violation was initiated by another.")

(R. 32-2, at 26). In that same opinion, the court explained how IMG could potentially be liable under the FDUTPA for "allow[ing]" the developer to refer to their relationship as a partnership, and thereby contributing to the misleading impression that it was in a legal partnership with the developer. (*Id*. at 35.)

2.    "Property Damage"

The Policy defines "property damage" to include "loss of use of tangible property that is not physically injured." (R. 8-4, at 25, Page ID# 804.)  Westchester argues that the damages sought in the *Gastaldi* suit were for "economic damages," specifically, a "loss on investment," which is not covered under the Policy.  The jury rejected this argument, and found that there was "property damage" triggering coverage under the Policy.  IMG presented ample evidence at trial to support this finding, and we find that the jury finding is not contrary to Ohio law.  Even under Ohio law, "purely economic damages" are insurable under the "loss of use of tangible property" language at issue in the Policy. *See Hartzell Indus., Inc. v. Fed. Ins. Co.*, 168 F. Supp. 2d 789, 796 (S.D. Ohio 2001) ("The Court cannot conceive of damages for the loss of use of tangible property that is not physically injured being anything other than 'purely economic losses.'").  Because the jury had adequate evidence to find that there was an "occurrence" and "property damage," the district court properly denied Westchester's motion for judgment notwithstanding the verdict.

## II.    DUTY TO DEFEND

1.    Breach

In its cross-appeal, IMG challenges the district court's denial of IMG's motion for judgment on Westchester's duty to defend.  This presents a question of contract interpretation, which is a question of law that is subject to *de novo* review.  *First Am. Nat. Bank v. Fid. & Deposit Co. of Maryland*, 5 F.3d 982, 984 (6th Cir. 1993).

To determine whether Westchester's had a duty to defend IMG in the *Gastaldi* suit, we look to the language of the Policy.  Westchester's obligations flow from the covenants it agreed to in the Policy, and not from any general legal principles under Ohio law.  Insofar as the parties

debate whether Westchester was a "true" excess insurer or "coincidental" excess insurer, and whether Westchester was obligated to provide "drop down" coverage under Ohio legal precedent, these issues are red herrings.

The Policy provides that Westchester has a "duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' *when the 'underlying insurance' [Great Divide] does not provide coverage. . . .*" (R. 33-3, at 9) (emphasis added). Westchester's obligations under this provision turn on what it means to "provide coverage"—and, more specifically, whether an underlying insurance that *provides for* coverage, but nevertheless improperly *denies* coverage, "provides coverage," under the terms of the Policy.

The term "provides" could reasonably mean either "provide for" or "undertakes to deliver." Under the latter reading, Westchester would have become responsible for defending IMG in the *Gastaldi* suit when Great Divide wrongfully denied coverage. Since the language in this Policy is susceptible to more than one meaning, it is ambiguous. *See Lager v. Miller-Gonzales*, 896 N.E.2d 666, 669 (Ohio 2008) (ambiguity exists "when a provision at issue is susceptible of more than one reasonable interpretation"); *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003) (a contract is ambiguous where it cannot be given a "definite legal meaning"); *see also* 11 Williston on Contracts § 30:5 (4th ed.). Where language in a contract is ambiguous, we generally construe it against the drafter—in this case, Westchester. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 764 (6th Cir. 2008); *see also Mell v. Anthem, Inc.,* 688 F.3d 280, 286 (6th Cir. 2012) (where an insurance contract is ambiguous, "the policy language [must] be liberally construed in favor of the claimant who seeks coverage.") (internal quotation marks and citation omitted). In this case, we construe the word "provides" to mean "undertakes to deliver."

Because the *Gastaldi* suit was a "suit" seeking damages for "property damage," and Great Divide did not undertake to deliver coverage, we find that Westchester had a duty to defend IMG after Great Divide wrongfully denied coverage.

A second, separate provision of the Policy also independently supports the finding that Westchester owed a duty to cover IMG's defense costs when Great Divide wrongly denied coverage: "If no other insurer defends, [Westchester] will undertake to do so, but [Westchester] will be entitled to the insured's rights against all those other insurers." (R. 33-3, at 19.) At the time IMG requested that Westchester defend it in the *Gastaldi* suit, after Great Divide had refused to do so, "no other insurer" had defended IMG. At that time, Westchester had a duty to defend IMG, since, as discussed above, the *Gastaldi* suit was a "suit" for "property damage."

Under Ohio law, an insurer's duty to defend is determined at the time the underlying action is brought. *London Guar. & Accident Co. v. Shafer*, 35 F. Supp. 647, 649 (S.D. Ohio 1940); *Bloom-Rosenblum-Kline Co. v. Union Indem. Co.*, 167 N.E. 884, 886 (Ohio 1929); *see also Hocker v. N.H. Ins. Co.*, 922 F.2d 1476, 1482, 1486 (10th Cir. 1991) (affirming trial court's determination that umbrella insurer's duty to defend "was triggered as soon as [the primary insurer] made a decision to deny a defense."). At the time the underlying *Gastaldi* suit was brought, and IMG requested coverage from Westchester, "no other insurer" had defended IMG. Westchester breached the Policy when it refused to provide a defense despite IMG's specific demand after the underlying insurance, Great Divide, refused to provide a defense. The district court's conclusion that Westchester's promise "expired" when Great Divide and IMG settled is incorrect, since the breach occurred several years prior to the settlement. Similarly, the fact that Great Divide perhaps could have been said to have "defend[ed]" the *Gastaldi* suit when it settled

with IMG is not relevant to our analysis. There is no basis in the policy language for the after-the-fact excuse of a breach of contract.

We also disagree with the district court's finding that Westchester's promise to undertake defense "is dependent on the fulfillment of [the] condition[] . . . that Westchester maintains subrogation rights against the primary insurer." (R. 153, at 24, 28.) Other than the fact that this provision as a whole happens to be included in a section of the contract under the umbrella heading, "Conditions," nothing in this provision makes Westchester's duty to defend contingent on a right of subrogation against the primary insurer. Indeed, the only conditional language in the provision is "*if* no other insurer steps in to defend," and it is undisputed that that happened in this case: Great Divide denied coverage, *i.e.*, did not defend. Under a plain reading of this clause, obtaining or preserving subrogation rights was not a condition precedent to Westchester's duty. Accordingly, under the terms of the Policy, Westchester was obligated to defend IMG when Great Divide improperly refused to do so. Westchester breached the Policy when it refused to provide a defense to IMG after no other insurer did so, despite IMG's specific demand.

## 2. Damages

The parties stipulate that IMG incurred $8,246,655.57 in defense fees and costs in connection with the *Gastaldi* suit. IMG's requested damages amount, $7,996,655.57, has already been set off by the $250,000 paid in settlement by Great Divide, but Westchester argues that it should be set off entirely, since Great Divide was contractually obligated to pay for the full amount of IMG's defense costs, and IMG released them from that obligation. There is no legal basis to obtain a set-off under these circumstances, and we find that applying a credit or set-off would not be appropriate under the circumstances of this case.

Westchester was contractually obliged to undertake defense when Great Divide refused to defend IMG in the *Gastaldi* suit. Had it done so at that time, Westchester unquestionably would have been entitled to subrogation rights against Great Divide.[5] Westchester breached its duty when it refused to defend IMG, despite IMG's repeated demands, after Great Divide wrongfully denied coverage. If there was any question as to Westchester's obligations under the Policy, Westchester could have sought a judicial declaration of its rights. It is not relevant that Westchester's refusal to defend was done in "good faith," as there is no exception to breach of contract for "good faith" denial of coverage—it merely prevents additional civil claims. After Great Divide improperly refused coverage and defense, Westchester was repeatedly offered a full and fair opportunity to defend IMG or seek a judicial declaration of its rights. Its refusal to do so was not excused by IMG's subsequent settlement with Great Divide. Holding otherwise would not only penalize IMG, the non-breaching party, but also would run counter to the well-accepted public policy favoring settlement of insurance disputes, *see Fulmer v. Insura Prop. & Cas. Co.*, 760 N.E.2d 392, 400 (Ohio 2002) (citing public policy favoring settlement of disputes), and would provide perverse incentives: encouraging insurers to disclaim their duties to defend.

We recognize that Westchester did not anticipate the risk of funding IMG's defense costs without the possibility of reimbursement from Great Divide. But neither did IMG. IMG negotiated and paid for CGL policies from Great Divide and Westchester to cover itself from liability in precisely this type of situation. Certainly, as the non-breaching party, IMG must not be left holding the bag. Accordingly, we find that Westchester is liable to pay $7,996,655.57 plus pre-judgment interest to IMG.

---

[5] We decline to consider whether the settlement between IMG and Great Divide affected Westchester's ability to recover from Great Divide under equitable principles, including subrogation.

3. Contribution

Having found that Westchester is liable under the terms of its Policy, we note that Westchester can still seek reimbursement from Great Divide under various equitable principles including equitable contribution and subrogation. The district court dismissed Westchester's claims against Great Divide as moot. We decline to take any position on the merits of these claims, which are not before us at this time, but we find that Westchester's claims against Great Divide have been adequately preserved such that the district court can and should revisit these issues on remand.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order denying Westchester's Rule 50(b) motion for judgment as a matter of law, **REVERSE** the district court's order entering judgment in favor of Westchester on IMG's duty-to-defend claims, and **REMAND** the case to the district court with instructions to enter judgment in favor of IMG on IMG's motion for judgment on Westchester's Duty to Defend, and for further proceedings consistent with this opinion, including consideration of Westchester's contribution claims against Great Divide, which have been sufficiently preserved on appeal.