RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DIXIE FUEL CO., LLC and BITUMINOUS CASUALTY CORP.,

　　　　　　　　　　　　　　　*Petitioners*,

　　　*v.*

No. 15-3553

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and ARLIS HENSLEY,

　　　　　　　　　　　　　　　*Respondents*.

---

On Petition for Review of a Decision and Order
of the Benefits Review Board, United States Department of Labor.
No. 14-0049 BLA.

Decided and Filed:  April 29, 2016

Before: SUTTON and GRIFFIN, Circuit Judges; OLIVER, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:**  Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners.  Gary K. Stearman, Rebecca J. Fiebig, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  Joseph E. Wolfe, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Hensley.

---

[*]The Honorable Solomon Oliver, Jr., Chief United States District Court Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

OLIVER, District Judge.　Petitioners Dixie Fuel Company, LLC and its insurer, Bituminous Casualty Corporation (collectively, "Dixie" or "Petitioners"), appeal the decision of the Benefits Review Board ("Board") of the United States Department of Labor, affirming Administrative Law Judge ("ALJ") Kenneth A. Krantz's decision awarding Respondent Arlis Hensley ("Hensley") benefits under the Black Lung Benefits Act ("Act"), 30 U.S.C. § 901, *et seq*.　The Director, Office of Workers' Compensation Programs, United States Department of Labor ("Director"), also appears in this matter as a respondent.　This case is before the court for a second time.　In adjudicating Dixie's first petition for review, a prior panel of this court vacated the decision of the Board and remanded for further proceedings.　*See Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 700 F.3d 878, 881 (6th Cir. 2012).　The court held that the ALJ erred by finding that Hensley's x-ray evidence alone was sufficient to establish the existence of pneumoconiosis.　*Id.* at 880.　The panel remanded the case for the ALJ to weigh all of the evidence referenced in 20 C.F.R. § 718.202(a)(1)-(4)—x-rays, biopsy, medical opinions, and CT scans—together.　*Id.* at 881.　On remand, the ALJ again concluded that Hensley was entitled to benefits under the Act.　Dixie now raises numerous challenges to the ALJ's decision and the Board's affirmance.　For the following reasons, Dixie's petition is denied.

## I. BACKGROUND

### A. Black Lung Benefits Act

The Black Lung Benefits Act was passed and enacted to "provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis."　30 U.S.C. § 901(a).　To establish entitlement to benefits under the Act, a claimant is required to prove, by a preponderance of the evidence, that: (1) he has pneumoconiosis; (2) his pneumoconiosis arose in whole or in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis.　*Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014).

## B. Procedural History

Arlis Hensley, born in 1949, was employed as a coal miner for thirteen years. Many of those years were spent with Petitioner Dixie Fuel Company. Hensley left Dixie in 1988 after seriously injuring his hand and arm in an accident. He has not worked since. Hensley also smoked cigarettes for about ten to twelve years, averaging half a pack a day before quitting approximately twenty-nine years ago.

Hensley first noticed issues with his breathing in 1987, while still employed in the mines. In 1990, he filed his first claim for benefits under the Act. The Department of Labor denied his claim because he failed to prove that he had pneumoconiosis, that the pneumoconiosis arose out of his coal mine employment, or that he was totally disabled by the disease. He filed a second claim in 2003. This time his claim was denied, despite a finding of pneumoconiosis, because Hensley did not prove that he was totally disabled by the disease. Hensley did not appeal either of these decisions.

Hensley filed the present claim for benefits on December 4, 2006. This time, the Department of Labor recommended awarding benefits. At the request of Petitioners, the matter was referred to an ALJ. The evidence, which consisted of chest x-rays, biopsy results, CT scans, pulmonary function studies, arterial blood-gas studies, treatment records and several medical opinions, was forwarded to the ALJ on September 14, 2007.

On February 9, 2010, the ALJ issued a decision awarding Hensley benefits. As this was Hensley's third claim, the ALJ had to first determine whether Hensley was totally disabled, the element of entitlement he failed to prove in his 2003 claim. *See* 20 C.F.R. § 725.309(c). On the basis of three medical opinions, the ALJ answered this question in the affirmative. The ALJ's determination has not been challenged. The ALJ then considered the entirety of the medical evidence to determine that the remaining elements of Hensley's claim had been established.

Petitioners appealed the ALJ's decision to the Board, which affirmed the award of benefits. After unsuccessfully moving for reconsideration before the Board, Dixie petitioned this court for review. On appeal, this court vacated the Board's decision and remanded the case for the ALJ to weigh together all of the relevant evidence referenced in 20 C.F.R. § 718.202(a)(1)-

(4).   On remand, the ALJ reviewed numerous x-rays, several medical opinions, treatment records, CT scans, and a biopsy.  Having weighed this evidence together, as instructed, the ALJ again concluded that Hensley had established the existence of pneumoconiosis.  Petitioners, again, appealed the ALJ's decision, which the Board, again, affirmed.  This appeal followed.

### C.  Medical Evidence

On remand, the ALJ reconsidered all of the evidence discussed below.

### 1.  X-ray Readings

There were six readings of two x-rays, dated September 10, 1990 and February 23, 2004, which were submitted in support of Hensley's prior claims.  Dr. Sargent, dually qualified as a Board-certified radiologist and B-reader,[1] interpreted the September 10, 1990 x-ray as positive for pneumoconiosis, while Dr. Gordonson, also dually qualified, and Dr. Dahhan, a B-reader, read this x-ray as negative for pneumoconiosis.  Dr. Baker, a B-reader, interpreted the February 23, 2004 x-ray as positive for pneumoconiosis, while Dr. Halbert, dually qualified as a Board-certified radiologist and B-reader, read the same x-ray as negative for pneumoconiosis.  When readings were in conflict, the ALJ considered the radiological qualifications of the physicians and gave determinative weight to the interpretations of dually qualified physicians.  *See* 20 C.F.R. § 718.202(a)(1).  Thus, he found the September 10, 1990 x-ray evidence to be in equipoise and the February 23, 2004 x-ray evidence to be negative for pneumoconiosis.

Eleven readings of five x-rays were provided in support of the current claim, dated November 1, 2006, January 5, 2007, April 12, 2007, July 28, 2008, and January 16, 2009.  Dr. Alexander, who is dually qualified, read the November 1, 2006 x-ray as positive for pneumoconiosis, while Dr. Wheeler, also dually qualified, read the x-ray as negative for pneumoconiosis.  Three physicians read the January 5, 2007 x-ray. Dr. Ahmed, dually qualified as a Board-certified radiologist and B-reader, and Dr. Baker, a B-reader, interpreted the x-ray as

---

[1]A "B-reader" is a "physician [who] has demonstrated ongoing proficiency in evaluating chest radiographs for radiographic quality and in the use of the [International Labour Organization] classification for interpreting chest radiographs for pneumoconiosis and other diseases by taking and passing a specially designed proficiency examination . . . , and has maintained that certification through the date the interpretation is made."  20 C.F.R. § 718.102(e)(2)(iii).

positive for pneumoconiosis. However, Dr. Wheeler read the same x-ray as negative for pneumoconiosis. Dr. Dahhan, a B-reader, provided the only reading of the April 12, 2007 x-ray, which was positive for pneumoconiosis. Dr. Alexander read the July 28, 2008 x-ray as positive for pneumoconiosis, while Dr. Rosenberg, a B-reader, read the same x-ray as negative. Finally, Dr. Miller, who is dually qualified, read the January 16, 2009 x-ray as positive for pneumoconiosis, while Dr. Wheeler read the same x-ray as negative.

In resolving conflicting evidence, the ALJ again gave greater weight to readings by dually qualified radiologists. As such, the November 1, 2006, January 5, 2007, and January 16, 2009 x-rays were found to be in equipoise, while the July 28, 2008 x-ray was found to be positive for pneumoconiosis. The April 12, 2007 x-ray was also found to be positive for pneumoconiosis, based on Dr. Dahhan's uncontradicted reading. Considering the more recent x-ray evidence to be more relevant to a determination of pneumoconiosis, the ALJ noted that those readings were either positive for pneumoconiosis or in equipoise. The only negative x-ray was from 2004. Thus, the ALJ found that the x-ray evidence established the existence of pneumoconiosis.

Dixie had also attempted to submit Dr. Wheeler's reading of the July 28, 2008 x-ray, as rebuttal evidence. However, because this reading did not comply with the evidentiary limitations of 20 C.F.R. § 725.414(a)(3), the ALJ, in his pre-remand decision, denied admission.[2]

## 2. Biopsy

On March 24, 2008, Hensley underwent a needle core biopsy to evaluate a large mass in his right lung. The resulting report indicated that the specimen lacked normal lung tissue and consisted of "a granulomatous inflammatory process characterized by areas of geographic caseous necrosis." App. at 24. Dr. Oesterling, at the request of Dixie, examined the slides from

---

[2]The responsible operator is entitled to submit two x-ray interpretations as affirmative evidence. The miner may then rebut those readings by introducing interpretations from a different doctor. In response to this rebuttal evidence, the responsible operator may then introduce an additional statement from the doctor who performed the original, affirmative reading, but cannot introduce evidence from a third physician. *See* 20 C.F.R. § 725.414(a)(3). Dixie designated Dr. Rosenberg's interpretation of the July 28, 2008 x-ray as affirmative evidence. Hensley rebutted that reading by submitting a contradictory reading of the same film by Dr. Alexander. Rather than introducing an additional statement from Dr. Rosenberg, as called for by § 725.414, Dixie unsuccessfully attempted to introduce Dr. Wheeler's reading.

the biopsy and concluded that, while there was evidence of coal mine dust inhalation, the specimens did not include an adequate amount of interstitial tissue to allow for a conclusive diagnosis. He explained that "the limited tissue precludes an adequate way of assessing the extent of change, and therefore in any way assessing any respiratory distress which [Hensley] may have suffered due to his coalworkers' disease." App. at 25. The ALJ found that these results were of no probative value.

### 3. Medical Opinions

Six physicians provided medical opinions regarding Hensley's condition. While Hensley's three treating physicians—Drs. Powers, Stoltzfus, and Augustine—found pneumoconiosis, the ALJ accorded little weight to their opinions for various reasons. The ALJ found Dr. Powers's opinion "too equivocal and vague" to support a definitive finding. App. at 26. Dr. Stoltzfus's opinion was discounted because its evidentiary basis was unclear. Finally, Dr. Augustine's treatment note did not indicate an awareness of Hensley's rheumatoid arthritis and, thus, was not considered sufficiently reasoned.

The ALJ gave greater attention to the remaining three medical opinions, which were provided by Drs. Baker, Dahhan, and Rosenberg. Dr. Baker, a Board-certified internist and pulmonologist, conducted an examination of Hensley on January 5, 2007, pursuant to Department of Labor regulations. *See* 20 C.F.R. § 725.406(a). Dr. Baker did a full review of Hensley's occupational, medical, and smoking histories and performed a physical examination, a chest x-ray, a pulmonary function test, an arterial blood-gas study, and an electrocardiogram (EKG). Based on his examination, Dr. Baker diagnosed Hensley with pneumoconiosis, because he found no condition other than Hensley's occupational exposure to coal dust to account for the x-ray results. Dr. Baker also diagnosed Hensley with Chronic Obstructive Pulmonary Disease (COPD), mild resting hypoxemia, and chronic bronchitis, all of which were "significantly contributed to or substantially aggravated by coal dust exposure." App. at 132. He opined that the pneumoconiosis, in tandem with the other impairments, contributed to Hensley's pulmonary impairment. However, like Dr. Augustine, Dr. Baker did not have access to subsequent medical records indicating the possibility of rheumatoid disease as a potential cause of Hensley's condition. As such, the ALJ ultimately accorded little weight to his diagnosis of

pneumoconiosis.  He nonetheless gave "probative weight" to Dr. Baker's finding that Hensley's pneumoconiosis caused his total disability.  App. at 38.

Dr. Dahhan, also a Board-certified internist and pulmonologist, examined Hensley on April 12, 2007.  Like Dr. Baker, Dr. Dahhan obtained a full medical and occupational history and conducted a physical examination, a pulmonary function test, an arterial blood-gas study, a chest x-ray, and an EKG.  He also reviewed the tests conducted by Dr. Baker.  Unlike Dr. Baker, Dr. Dahhan noted that Hensley was being treated for rheumatoid arthritis.  In his initial report, Dr. Dahhan diagnosed Hensley with pneumoconiosis on the basis of his x-ray, which "showed opacities in the mid and upper zones consistent with Category 1 simple coal workers' pneumoconiosis . . . ." App. at 28.  However, he then opined that Hensley's pulmonary disability was caused by rheumatoid lung disease and possibly his smoking habit.  The ALJ ultimately gave Dr. Dahhan's original diagnosis of pneumoconiosis little weight, because it appeared to be based solely on his interpretation of Hensley's chest x-ray, which had previously been considered by the ALJ.  Despite discounting Dr. Dahhan's opinion regarding the cause of Hensley's pulmonary impairment, the ALJ relied on the doctor's opinion regarding its contribution to Hensley's total disability.

Additionally, Dr. Rosenberg, a Board-certified internist and pulmonologist, examined Hensley on July 28, 2008, at Petitioners' request.  He too conducted a series of tests and evaluated Hensley's medical and occupational history. Dr. Rosenberg also reviewed Hensley's answers to interrogatories and claim application, the reports of Drs. Baker and Dahhan, several x-ray readings, and the pathology report from Hensley's biopsy.  After subsequently reviewing the treatment records of Drs. Powers and Stoltzfus, as well as Dr. Wheeler's interpretation of the November 1, 2006 chest x-ray, Dr. Rosenberg concluded that Hensley's lung disease was not pneumoconiosis.

### 4.  CT Scans

Three CT scans were taken between February 19, 2008 and January 27, 2009.  The scan taken on February 19, 2008, revealed "a 3.7-cm ovoid-shaped mass with spiculated margins" in the right lung base.  App. at 29.  The July 22, 2008 CT scan showed the 3.7-centimeter right lung

mass, as well as pulmonary fibrosis and multiple nodules "suggestive of noncalcified or partially calcified granulomata." *Id.* Finally, the CT scan taken on January 27, 2009 again revealed the right lung mass with "[m]ultiple pulmonary nodules and masses . . . as well as scattered scarring . . . ." *Id.* Dr. Rosenberg was the only physician to examine the CT scan reports and provide an opinion as to whether they supported a finding of pneumoconiosis. However, because the CT scan reports themselves did not address whether the results were consistent with pneumoconiosis, the ALJ placed little weight on this evidence.

### 5. Treatment Records

Hensley also submitted treatment records from Ms. Brooks, a registered nurse at the Chronic Respiratory Clinic of Stone Mountain Health Services ("Stone Mountain"), and Drs. Powers and Augustine. Hensley underwent an annual checkup with Ms. Brooks on November 27, 2006. After documenting Hensley's self-reported symptoms and conducting a physical examination, Ms. Brooks diagnosed him with coal workers' pneumoconiosis, COPD, and shortness of breath. Dr. Powers, who treated Hensley throughout 2008, similarly diagnosed him with "likely [coal workers' pneumoconiosis] +/- granulomas," as well as "rhinitis, arthritis in his shoulder, and caseous granulomas." App. at 30-31. Finally, following a second annual checkup at Stone Mountain on February 5, 2009, Dr. Augustine confirmed Hensley's previous diagnosis of coal workers' pneumoconiosis and COPD, with chronic dyspnea resulting from these two primary conditions. While these reports clearly indicated a concern that Hensley may have pneumoconiosis, they were brief and unelaborated, focusing on treatment rather than a determination of the etiology or other aspects of Hensley's condition. Consequently, the ALJ accorded them only "some limited probative value." App. at 34.

## II. STANDARD OF REVIEW

This appeal involves questions of both law and fact stemming from the ALJ's decision on remand and the Board's affirmance. We review the Board's legal conclusions *de novo*. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). We must affirm the Board's decision if the Board has not committed legal error or exceeded its scope of review. *Id.* (citing *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997)). When the Board affirms an

ALJ's decision, we do not consider whether the Board's decision was supported by substantial evidence, but whether the Board properly concluded that the ALJ's decision was supported by substantial evidence and was in accordance with applicable law. *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 477-78 (6th Cir. 2011) (citing *Jonida Trucking*, 124 F.3d at 742). Evidence is "substantial" where it is relevant and "a reasonable mind might accept [it] as adequate to support a conclusion." *Id.* at 478 (quotation marks omitted). To determine whether this standard has been satisfied, "we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence." *Id.* (citing *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997)).

When the challenge relates to the weighing of conflicting medical evidence, our scope of review is "exceedingly narrow." *Marathon Ashland Petroleum v. Williams*, 733 F.3d 182, 187 (6th Cir. 2013) (citing *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 259 (6th Cir. 2007)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Big Branch*, 737 F.3d at 1069 (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)). Thus, we will uphold the ALJ's decision where it "rest[s] within the realm of rationality." *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 664 (6th Cir. 2015) (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999)). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *Morrison*, 644 F.3d at 478.

## III. ANALYSIS

### A. Board's Rulings
### 1. Harmless Error

Dixie first argues that the Board erred by treating as harmless error the ALJ's failure to specifically rule on its request, on remand, to submit Dr. Wheeler's x-ray reading in lieu of Dr. Rosenberg's reading, which had previously been considered. According to Petitioners, the Board determined that admission of the x-ray reading "would not have altered the ALJ's conclusion . . . because the Department of Labor has concluded that Dr. Wheeler's negative

readings were 'not to be credited.'" Petitioners' Br. 16. This argument is predicated on the Board's reference to a Department of Labor bulletin in a footnote that explained:

> Moreover, the Department of Labor has concluded that Dr. Wheeler's negative readings for pneumoconiosis are not to be credited "in the absence of persuasive evidence challenging" published reports finding that Dr. Wheeler's negative readings are not credible, or otherwise rehabilitating Dr. Wheeler's x-ray readings.

App. at 13 n.6. Dixie contends that, because the Board "resolved a dispute as to the contents and credibility of proof as a matter of law, without notice to the parties, by applying a bulletin that did not have the benefit of rulemaking or public participation," Petitioners' Br. 16, its decision violated the Administrative Procedure Act ("APA") and deprived Petitioners of a fair hearing.

However, we need only consult the record to quickly dispel any misconception as to the basis of the Board's decision. As the Board explained in the body of its decision:

> The administrative law judge's omission was harmless, however, because substituting Dr. Wheeler's negative reading of the July 28, 2008 x-ray for Dr. Rosenberg's negative reading would not render inaccurate the administrative law judge's determinations that "the most recent x-rays have been found to be either positive for pneumoconiosis or in equipoise," and that "the only negative x-ray is from 2004."

App. at 13. This decision can be read, quite logically, as wholly untethered to the Board's reference, in a footnote clearly meant as an aside, to the Department of Labor's bulletin.

As the Board observed, the ALJ determined that the only negative x-ray reading was from February 23, 2004. Three of the subsequent readings—from November 1, 2006, January 5, 2007, and January 16, 2009—were in equipoise. The remaining two were determined to be positive for pneumoconiosis. First, the ALJ credited Dr. Dahhan's unopposed, positive reading of the April 12, 2007 x-ray. Then, regarding the July 28, 2008 x-ray, which is at issue here, the ALJ determined that the positive reading of Dr. Alexander, a dually qualified radiologist, should be accorded greater weight than the negative reading of Dr. Rosenberg, a B-reader. As such, the Board quite properly concluded that, had Dixie been allowed to substitute Dr. Wheeler's reading for that of Dr. Rosenberg, the ALJ's ultimate conclusion would have remained accurate. The July 28, 2008 x-ray would now be in equipoise, which would leave "'the most recent x-rays . . .

either positive for pneumoconiosis or in equipoise' . . . ." App. at 13. Dixie's argument, that the Board's conclusion turned on facts buried in a footnote, simply diverges from any literal reading of the decision.

## 2. "Law of the Case" Doctrine

Dixie also argues that the Board misapplied the "law of the case" doctrine by declining to reconsider several of Petitioners' arguments rejected during the prior appeal. The law of the case doctrine is inapplicable, according to Dixie, because this court remanded the case without considering all of its challenges to the Board's, and the ALJ's, decisions. Petitioners contend that, rather than invoking the law of the case doctrine, the Board should have reconsidered whether "the ALJ had erred when he found Dixie's proof did not rebut the presumption that Hensley's pneumoconiosis arose out of his coal mine employment." Petitioners' Br. 32.

Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation. *See, e.g., Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015). On remand, the Board invoked the doctrine with respect to four discrete arguments advanced by Dixie: (1) the ALJ "improperly excluded the negative x-ray reading by Dr. Wheeler"; (2) the ALJ "failed to resolve the 'dispute among the positive readings' as to the 'size and location of the opacities'"; (3) the ALJ erred by relying on a "'presumption' that pneumoconiosis is a progressive disease, in giving greatest weight to the more recent x-rays," App. at 11; and (4) the ALJ violated the APA "by relying on his internet research of articles cited by Dr. Rosenberg, and substituted his opinion for that of Dr. Rosenberg," App. at 15.

By invoking what it deemed the law of the case doctrine, the Board was simply declining to revisit its prior judgments. These rulings were left undisturbed by this court's limited remand and Dixie offered no persuasive basis for reconsidering them. Yet, there was no suggestion by the Board that Dixie would be foreclosed from renewing their objections before this court. As such, we will consider the issue raised in the present appeal—whether the ALJ erred by relying on research outside of the administrative record to discredit Dr. Rosenberg's opinion. However, Dixie has foreclosed the remaining three issues—to which the Board applied the law of the case

doctrine—from our consideration inasmuch as they have failed to specifically raise their objections here. *See, e.g.*, *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 602 (6th Cir. 2014) (explaining that issues averted to in a perfunctory manner without further development in a brief are waived (citing *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006))).

### B. ALJ's Findings

### 1. Pneumoconiosis Due to Coal Mine Employment

Dixie next mounts a series of challenges to the ALJ's findings on remand regarding the existence of pneumoconiosis and its causal connection to Hensley's coal mine employment. Dixie first argues that the ALJ erred in finding the evidence established pneumoconiosis, based on his mistaken belief that x-rays are a more objective test for the disease than other evidence. In so doing, the ALJ unreasonably discounted Dr. Rosenberg's contrary opinion and willfully disregarded the negative results of Hensley's CT scans and biopsy. But, as the Director correctly notes, Dixie failed to raise this issue before the Board. In an attempt to salvage this issue, Petitioners assert that they did, however, "challenge[] the ALJ's failure to weigh all the evidence together and . . . the ALJ's rationale." Petitioners' Reply 4 n.2.

This argument is insufficient to preserve this issue for appeal. First, Dixie appears to have presented a different issue to the Board, arguing that "by essentially reiterating his findings at 20 C.F.R. § 718.202(a)(1), (a)(2), (a)(3), the administrative law judge failed to comply with the . . . remand instructions." App. at 11. The Board found that, contrary to Dixie's argument, the remand instructions did not require the ALJ to "reconsider his prior judgment with respect to any one piece of contrary evidence." *Id.* (quoting *Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 700 F.3d 878, 881 (6th Cir. 2012)).

Moreover, a generalized challenge to the ALJ's weighing of the evidence does not preserve the specific objections raised here, and we, thus, decline to consider them. *See, e.g.*, *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 663 (6th Cir. 2015) ("Generally, this court will not review issues not properly raised before the [Benefits Review] Board."); *see also Blue Mountain Energy v. Dir., Office of Workers' Comp.*

*Programs*, 805 F.3d 1254, 1259 n.3 (10th Cir. 2015) (explaining that oblique references and "scattered" and "perfunctory" statements are insufficient to preserve issues for appeal).

Nor are we persuaded by Dixie's remaining arguments, which essentially urge us to ignore the ALJ's findings and to reweigh the evidence ourselves. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1073 (6th Cir. 2013). Dixie, nonetheless, contends that the ALJ's decision to discredit Dr. Dahhan's opinion "is not supported by the underlying record." Petitioners' Br. 24. Further, they argue that the ALJ wrongly presumed that pneumoconiosis is always latent and progressive. In reviewing the record, we find no error in the ALJ's analysis. The ALJ began by summarizing Dr. Dahhan's relevant findings. Dr. Dahhan originally diagnosed Hensley with coal workers' pneumoconiosis on the basis of his chest x-ray. However, the physician had also diagnosed Hensley with rheumatoid arthritis and ultimately concluded that it was this disease, and not pneumoconiosis, that was responsible for the changes noted in the x-ray, as well as the biopsy results. Dr. Dahhan explained that it was impossible to differentiate, "with certainty," between "radiological changes caused by rheumatoid arthritis and those caused by coal workers' pneumoconiosis . . ." App. at 125. He also noted that Hensley developed more abnormalities on his x-ray, and his pulmonary function deteriorated, between 1990 and 2007. Since rheumatoid disease is progressive and can be responsible for similar x-ray manifestations and respiratory impairment, he concluded that it, and not pneumoconiosis, was the cause of Hensley's pulmonary impairment. Dr. Dahhan opined that coal dust exposure "should not" account for the changes in Hensley's pulmonary functions, since Hensley left mining work in 1987 or 1988. App. at 129. Yet, the physician acknowledged, without further explanation, that medical literature did not "rule out a latent impact of coal dust on the respiratory system." *Id.*

The ALJ observed the tension in the doctor's statements. Dr. Dahhan failed to explain why coal mine dust, which he acknowledged could have a latent impact on the respiratory system, "should not" have a latent impact in Hensley's case. App. at 36. The ALJ found this to be an insufficient explanation for Dr. Dahhan's decision to completely exclude coal mine dust as a cause of Hensley's lung disease. Because the doctor inexplicably adopted a position seemingly inconsistent with his own understanding of the medical literature, the ALJ could reasonably conclude that Dr. Dahhan's opinion should be accorded little weight. *See Sunny Ridge Mining*

*Co., Inc. v. Keathley*, 773 F.3d 734, 738-40 (6th Cir. 2014) (finding ALJ properly discounted doctor's conclusion that chronic bronchitis was not pneumoconiosis based on the premise that "the bronchitis associated with coal dust exposure usually ceases with cessation of exposure."); *see also Lemarco, Inc. v. Helton*, 559 F. App'x 465, 468 (6th Cir. 2014).

Dixie also raises a challenge to the ALJ's consideration of Dr. Rosenberg's opinion, maintaining that the ALJ had no valid reason for discrediting it. Dixie asserts that the ALJ impermissibly relied on internet research outside the administrative record to refute Dr. Rosenberg's opinion. In so doing, he substituted his opinion for that of the medical professional, in violation of the APA and Dixie's right to a fair hearing.

Contrary to Dixie's assertions, the ALJ did not "play[] expert in this case . . ." Petitioners' Reply 15. Rather, he merely fulfilled his role as fact-finder by evaluating the credibility of Dr. Rosenberg's conclusions. *See Tenn. Consol. Coal Co. v. Crisp*, 866 F.2d 179, 185 (6th Cir. 1989) (explaining that determinations to credit or discredit medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that must be left to the ALJ); *Moseley v. Peabody Coal Co.*, 769 F.2d 357, 360 (6th Cir. 1985).

In concluding that Hensley did not suffer from pneumoconiosis, Dr. Rosenberg opined that the chest x-ray evidence did not exhibit the type of micronodularity consistent with prior coal dust exposure. Instead, Hensley exhibited linear interstitial scarring in the basal regions of the lungs, highly suggestive of another condition, such as rheumatoid arthritis. He further explained that some of the specific causes of linear interstitial lung disease include smoking and age. His report cited to a study that indicated a correlation between lung abnormalities and age. Dr. Rosenberg also criticized several studies that indicated a link between coal mine dust exposure and linear interstitial lung disease. The ALJ properly examined the articles upon which Dr. Rosenberg relied and determined that, while some of the articles supported Dr. Rosenberg's conclusions, others did not. For example, Dr. Rosenberg specifically criticized the Cockroft study, which "evaluated 124 coal miners and ex-coal miners, the overwhelming majority . . . [of whom] were smokers or ex-smokers . . . ." App. at 106. According to Dr. Rosenberg, "the findings cannot be used to support primary linear interstitial disease as being coal mine dust

related," because the researchers failed to control for smoking. *Id.* However, the ALJ determined, after consulting the Cockroft article, that, quite to the contrary:

> [I]t is clear that the authors did take smoking into account when interpreting their data, breaking down the group into smokers, non-smokers, and ex-smokers. The authors noted irregular opacities were significantly higher for smokers than for non-smokers. However, they noted that both non-smokers and smokers separately showed an increase in irregularity of opacities related to years of underground exposure, with a greater effect in non-smokers. They opined that smoking might be enhancing dust-related disease processes.

App. at 37. The ALJ also noted that one of the other studies Dr. Rosenberg discredited, as lacking in control data, in fact controlled for age, smoking, and level of dust exposure. Because he determined Dr. Rosenberg's criticisms to be largely unfounded, the ALJ reasonably rejected the physician's premise that linear interstitial lung disease is not related to coal dust exposure.

Even so, Petitioners argue that the ALJ erred by taking judicial notice of these articles, since they were "outside the administrative record." Petitioners' Br. 25-26. Dixie contends that, in so doing, the ALJ violated the APA. The taking of official notice, the administrative corollary to judicial notice, is permitted under the APA. If, however, a "decision rests on official notice of a material fact not appearing in the evidence in the record," the ALJ must give a party the "opportunity to show the contrary." 5 U.S.C. § 556(e). While it may be argued, as Dixie does, that remand is required because the ALJ failed to follow this procedure, such a result, we think, elevates form over substance. Petitioners do not claim to have been unaware of the articles or their contents. Nor could they do so reasonably, having submitted a medical opinion that relied on them. And, Dixie makes no attempt to argue that the ALJ misread or misinterpreted the articles. Any error by the ALJ was, thus, harmless. *See NLRB v. Johnson*, 310 F.2d 550, 552 (6th Cir. 1962) (explaining mere fact that judge took judicial notice of reports outside record did not invalidate his decision unless action substantially prejudiced result (citing *United States v. Pierce Auto Freight Lines*, 327 U.S. 515 (1946))).

Finally, Dixie's criticism of the ALJ's treatment of the biopsy and CT scan evidence is not well taken. Specifically, Dixie argues, "the ALJ erred in recharacterizing the negative biopsy evidence as 'neutral' and again ignoring the CT scans." Petitioners' Br. 28. While it is true that the ALJ found the biopsy evidence to be "neutral as to whether [Hensley] suffers from

pneumoconiosis," App. at 32, he carefully explained his reasons for so doing. The ALJ indicated that Dr. Oesterling, Petitioners' expert, examined the cells taken from a large mass in Hensley's right lung and determined that the "tissue confirmed that [Hensley] inhaled some component of coal mine dust," but without a larger portion of tissue, he could not render a definitive diagnosis. *Id.* Even conceding that the right lung mass was negative for pneumoconiosis, the ALJ reasoned that the biopsy evidence was "insufficient to rebut the presumption that the *other* abnormalities noted on the x-rays, which were found to be consistent with pneumoconiosis, were caused by [Hensley's] coal mine dust exposure." App. at 35. He also properly noted that negative biopsy results are not conclusive evidence that a miner does not have pneumoconiosis. *Id.* (citing 20 C.F.R. § 718.106(c)).

Rather than ignoring the CT scan evidence, the ALJ simply found it to be of "minimal probative value." App. at 33. After carefully summarizing the results of each of the three scans in the record, he observed that the CT scans merely assessed Hensley's lungs for "segmental consolidation, masses, nodules, and lymph nodes," rather than specifically evaluating them for the presence of pneumoconiosis. *Id.* More importantly, the only expert to analyze the CT scans for the indications of pneumoconiosis was Dr. Rosenberg. While Dr. Rosenberg opined that the scans showed "linear interstitial scarring with the evolution of granulomas changes" inconsistent with pneumoconiosis, the ALJ reasonably "place[d] limited weight," *id.*, on the CT scans, having discounted Dr. Rosenberg's opinion.

### 2. Total Disability Due to Pneumoconiosis

Finally, Dixie contends that the ALJ erred in determining that Hensley is totally disabled due to pneumoconiosis. Dixie asserts that the ALJ failed to apply the proper standard, clarified by *Arch on the Green, Inc. v. Groves*, 761 F.3d 594 (6th Cir. 2014), in assessing whether the medical opinions of Drs. Baker, Dahhan, and Rosenberg established that Hensley's total disability was caused by pneumoconiosis. In *Arch on the Green*, this court vacated an award of benefits, and remanded the case, where the ALJ articulated the proper standard—that pneumoconiosis must be a substantially contributing cause of the disability—but proceeded to apply the more lenient standard that had been superseded by regulation. 761 F.3d at 599-601.

Arguing that the ALJ in the instant matter committed the same error, Dixie characterizes his decision as follows:

> He noted that the claimant bore the burden of proving that pneumoconiosis was a substantial contributing cause of the disability, but then referred to the preamble to DOL's regulations to comment that *the addition of the words "material" and "materially" in section 718.204(c) were simply meant to highlight that pneumoconiosis must make more than "a negligible, inconsequential, or insignificant contribution to the miner's total disability."*

Petitioners' Br. 36 (emphasis added). This is a subtle, yet significant, distortion of the ALJ's written decision. The ALJ, in fact, referenced the preamble thusly:

> [T]he Department noted that the addition of the word "material" and "materially" to [20 C.F.R. § 718.204(c)(1)] reflects the view that *"evidence that pneumoconiosis makes only a negligible, inconsequential, or insignificant contribution to the miner's total disability is insufficient to establish that pneumoconiosis is a substantially contributing cause to that disability."*

App. at 38 (quoting 65 Fed. Reg. at 79,946) (emphasis added). The ALJ then determined that the medical opinions of Drs. Baker, Dahhan, and Rosenberg established that Hensley's pneumoconiosis was a "substantially contributing cause" of his total disability. *Id.* at 39.

Dixie, nonetheless, persists in arguing that the ALJ improperly credited these medical opinions in finding disability causation. According to Dixie, the ALJ was precluded from relying on Dr. Baker's opinion regarding causation, because he had previously discredited the physician's diagnosis of pneumoconiosis. However, it was not impermissible for the ALJ to rely on Dr. Baker's opinion at this stage. While he originally accorded Dr. Baker's diagnosis of pneumoconiosis little weight because the physician was unaware of Hensley's rheumatoid arthritis, the ALJ had since found that the x-ray evidence established pneumoconiosis. As such, the ALJ could reasonably credit Dr. Baker's opinion that the disease contributed to Hensley's total disability. And, Dr. Baker's determination that Hensley's pneumoconiosis, in tandem with other illnesses, had "an adverse effect on his respiratory condition and contribute[d] to his class 3 pulmonary impairment," App. at 132, could be considered in satisfying the "substantially contributing cause" standard. *See Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 489-90 (6th Cir. 2012) (affirming finding that miner's pneumoconiosis was substantially contributing cause of his total disability where one physician concluded that the miner's "cigarette smoking

and his coal mine dust exposure" both contributed to his disabling lung disease, while another found that "[w]ere it not for claimant's coal mine employment, respiratory impairment would not be to the same degree.").

Moreover, the ALJ did not rely on Dr. Baker's opinion alone. He also credited Drs. Dahhan and Rosenberg's opinions in finding disability causation established. Contrary to Dixie's assertions, the ALJ could reasonably credit their conclusions that Hensley's lung disease was totally disabling, despite their misdiagnosis of the disease's etiology. *See Island Creek Coal Co. v. Calloway*, 460 F. App'x 504, 510 (6th Cir. 2012) (finding ALJ had substantial evidence pneumoconiosis caused miner's disability because four doctors agreed on miner's disability, if not its cause, and ALJ had substantial evidence of pneumoconiosis caused by coal mine dust); *see also Collins v. Pond Creek Mining Co.*, 751 F.3d 180, 186-87 (4th Cir. 2014) (finding opinions from four doctors that disagreed about cause of miner's pulmonary impairment but were in accord about its effect constituted substantial evidence of disability causation). Drs. Dahhan and Rosenberg both concluded that Hensley's linear interstitial lung disease was the cause of his respiratory disability. And, their assessment of the impact of the disease was not dependent on their determination of its etiology. As such, the ALJ could quite reasonably conclude, based on their opinions, that the interstitial lung disease, which he had found to be pneumoconiosis, caused Hensley's disability.

## IV. CONCLUSION

For the reasons set out above, we find the ALJ's decision, that Hensley has coal workers' pneumoconiosis which has resulted in his total disability, is supported by substantial evidence. We also find no error of law requiring remand. Accordingly, we deny Dixie's petition for review in this matter.