**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0494n.06

Case No. 15-4291

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Aug 23, 2017
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| IMG WORLDWIDE, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| WESTCHESTER FIRE INSURANCE | ) | THE NORTHERN DISTRICT OF |
| COMPANY, | ) | OHIO |
| | ) | |
| Plaintiff-Appellee, | ) | |
| v. | ) | |
| | ) | |
| GREAT DIVIDE INSURANCE COMPANY, | ) | |
| Defendant-Appellant. | ) | |

Before: COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

**SILER**, Circuit Judge. This appeal involves a dispute between two insurers over which insurer bears the liability for defense costs incurred by their joint insured in an underlying lawsuit. Great Divide Insurance Company ("Great Divide"), the primary insurer of IMG Worldwide, Inc. ("IMG"), appeals from the district court's grant of partial summary judgment to Westchester Fire Insurance Company[1] ("Westchester"), IMG's excess insurer. The district court held that under the principle of equitable indemnity, Great Divide was liable to Westchester for approximately $8,000,000 in defense costs that IMG incurred in the underlying litigation when neither Great Divide nor Westchester would defend IMG. IMG itself had already been made whole: it received $250,000 of its defense costs from Great Divide in a settlement and the

---

[1]Although the briefs identify Westchester as a cross-appellant, the parties represent that Westchester does not cross appeal from a decision below.

remainder of its costs from Westchester after IMG sued Westchester for breach of its duty to defend and prevailed on appeal. On remand, Westchester added a third-party equitable-indemnification claim against Great Divide on which the district court granted Westchester partial summary judgment and from which Great Divide now appeals. We affirm the grant of partial summary judgment because Great Divide (as IMG's primary insurer) had primary liability for IMG's defense costs, thus allowing Westchester to assert equitable indemnification to recover those costs from Great Divide.

I

This case is a fight between two insurers over which insurer bears the liability for defense costs incurred by their joint insured in an underlying lawsuit.

Great Divide was IMG's primary commercial general-liability ("CGL") insurer from 2005 until 2009. The CGL policies obligated Great Divide both to indemnify IMG against certain liability to third parties for "bodily injury" or "property damage"—subject to a $1,000,000-per-occurrence limit and an annual $2,000,000 general-aggregate limit—and to defend IMG against any lawsuit seeking damages that Great Divide would be obligated to pay, with no limit on Great Divide's liability for defense costs.

Westchester was IMG's excess (i.e., umbrella) insurer from 2007 to 2009. Westchester provided IMG with various insurance coverages (including $25,000,000 in umbrella coverage in excess of the Great Divide CGL coverage), obligating Westchester to indemnify IMG for liability to third parties if the CGL policy failed to provide coverage or if its per-occurrence or general-aggregate limits had been reached. Westchester also owed a duty to defend IMG, without limitation, against any suit seeking damages that Westchester would be obligated to pay.

That arrangement did not alter Great Divide's status as primarily liable for all costs of defending any lawsuit in which Great Divide would be obligated to pay.

In 2008, several individuals sued IMG, alleging injury from a real-estate project in Florida. IMG forwarded the complaint to Great Divide and Westchester, seeking defense and indemnity. Both insurers refused to defend on grounds that the IMG's potential liability to the plaintiffs did not fall within the policies because the claims were not for "property damage." In May 2010, IMG settled the Florida litigation and sought reimbursement from Great Divide and Westchester for the roughly $5 million that IMG agreed to pay to the plaintiffs and roughly $8 million in defense costs.

In September 2010, Great Divide settled with IMG for $1,250,000, agreeing that $1 million exhausted the per-occurrence limit and that the remaining $250,000 would satisfy IMG's claim against Great Divide to indemnify IMG's defense costs. IMG released Great Divide from "any and all [c]laims based upon or arising out of" the Florida litigation.

In 2011, IMG sued Westchester, alleging failure to indemnify covered losses and breach of the duty to defend IMG in the Florida litigation. A jury returned a verdict for IMG as to the failure to indemnify, finding IMG had suffered $3,900,000 in covered losses. Westchester moved for leave to join Great Divide as an indemnitor. Great Divide voluntarily intervened in the lawsuit for the purpose of opposing Westchester's motion for leave, "in order to avoid becoming a party." Before ruling on the motion for leave, however, the district court entered a final judgment upholding the jury's award of $3,900,000 as covered losses but denying IMG's motion for judgment against Westchester as to defense costs, concluding that Westchester owed no duty to defend IMG in the Florida litigation. *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, 945 F. Supp. 2d 873, 883, 890 (N.D. Ohio 2013). The district court dismissed as moot

Westchester's motion for leave to amend to join claims against Great Divide. Both IMG and Westchester appealed the final judgment.

In 2014, this court affirmed the jury's award, but reversed the judgment on the issue of Westchester's duty to defend. *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, 572 F. App'x 402, 409, 412 (6th Cir. 2014). We concluded that "Westchester was obligated to defend IMG when Great Divide improperly refused to do so." *Id.* at 411. Although Westchester could not obtain a credit or setoff from IMG for amounts that should have been paid by Great Divide, we observed that Westchester may still have had recourse against Great Divide:

> [W]e note that Westchester can still seek reimbursement from Great Divide under various equitable principles including equitable contribution and subrogation. The district court dismissed Westchester's claims against Great Divide as moot. We decline to take any position on the merits of these claims, which are not before us at this time, but we find that Westchester's claims against Great Divide have been adequately preserved such that the district court can and should revisit these issues on remand.

*Id.* at 412.

On remand, Westchester was granted leave to file a third-party complaint against Great Divide. Great Divide filed an answer, and Westchester moved for partial summary judgment against Great Divide. Westchester asked the court to declare that Great Divide had breached a duty to defend IMG in the underlying litigation, was obligated to pay all defense costs associated with the underlying litigation, and owed reimbursement to Westchester for the costs paid by Westchester, none of which was extinguished by Great Divide's settlement with IMG. In its opinion granting Westchester's motion for partial summary judgment, the district court concluded that "Great Divide is liable under the principles of equity to reimburse Westchester for the defense costs it was ordered to pay to IMG." *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, No. 1:11 CV 1594, 2015 U.S. Dist. LEXIS 114659, at *37 (N.D. Ohio Aug. 28, 2015).

After determining the theories of equitable contribution and equitable subrogation to be inapplicable, the district court concluded that equitable indemnification was Westchester's appropriate remedy because the doctrine prevents a primary insurer like Great Divide from using a settlement to avoid defense costs for which it is responsible:

> IMG cannot be held directly accountable for its acceptance of the settlement agreement, or its breach of the subrogation clause in its contract with Westchester. As between Great Divide and Westchester, which are the only two entities this Court is now allowed to consider, Great Divide had the ultimate duty to pay the defense costs, and Westchester did not.

*Id.* at *36–37. The district court entered judgment in favor of Westchester for an additional amount of $9,157,284.66, reflecting $7,996,655.57 in defense costs plus interest. *IMG Worldwide, Inc. v. Westchester Fire Ins. Co.*, No. 1:11 CV 1594, 2015 U.S. Dist. LEXIS 144868, at *16 (N.D. Ohio Oct. 26, 2015).

II

We review de novo a district court's grant of partial summary judgment. *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, 689 F.3d 793, 797 (6th Cir. 2012). A grant of summary judgment is proper if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III

Great Divide argues that the district court erred on two grounds. Great Divide first contends that it received no benefit from Westchester to justify relief in equity. Great Divide asserts that it gained nothing from the litigation between IMG and Westchester because Great Divide's obligations were released years before Westchester was found liable. Great Divide

contends that if the judgment below is affirmed, Great Divide would "pay more than its fair share" by making it liable to both IMG and Westchester. According to Great Divide, the district court ignored the settlement between IMG and Great Divide in upholding the right of Westchester, a party that breached its obligations to IMG, to seek relief in equity. IMG's execution of the release, Great Divide argues, extinguished any obligation it may have had to pay any further defense costs, thereby preventing Westchester from acquiring any rights against Great Divide that could be enforced in equity or otherwise. Great Divide notes that Westchester did not acquire subrogation rights by contract from IMG, and it argues that Westchester should not be permitted to resort to indemnification to seek what it could not obtain through subrogation.

Second, Great Divide asserts that Westchester failed to prove all the elements of equitable indemnification. Great Divide posits that it did not have a relationship with Westchester that could give rise to tort liability. Great Divide argues that this absence of a relationship means that any claim for relief in equity is grounded in subrogation, not indemnity. In addition, Great Divide contends that while it may have had notice of the Florida litigation against IMG, it did not have notice of Westchester's claim for indemnity in the underlying dispute. Westchester did not place Great Divide on notice of a claim for indemnification until after IMG won at trial, which according to Great Divide, negated any incentive by Great Divide to assist in the litigation. Great Divide concludes by urging that Westchester should be stuck with the result of its poor choice to litigate rather than settle with IMG.

Westchester counters that the district court was correct in concluding that an excess insurer has a right to seek equitable reimbursement from a primary insurer. Westchester posits that the right to equitable indemnification comes from the costs it bore, which should have been

paid by Great Divide from the outset had Great Divide not refused to defend IMG. Westchester argues that it had the kind of relationship with Great Divide that is required for equitable-indemnification relief because Westchester's policy was an umbrella policy expressly made secondary to Great Divide's CGL policy, and Westchester's duty to defend arose solely because of Great Divide's action (exhausting its policy) or inaction (breaching its policy). According to Westchester, the settlement between IMG and Great Divide released IMG's contractual claims, but not Westchester's third-party rights vis-à-vis Great Divide. Westchester emphasizes that Great Divide was solely liable in the first instance for all the defense costs, which the district court properly awarded after finding that IMG's settlement with the Florida litigants occurred after IMG had incurred all its defense costs. Westchester maintains that Great Divide had notice of its potential indemnification obligations because Westchester moved for leave to file third-party claims against Great Divide and to add Great Divide as a party. Westchester also disagrees that proper notice requires meaningful participation in the underlying lawsuit between IMG and the Florida litigants. Equity would be illusory, says Westchester, if an insured's settlement with one insurer could be used to force all other insurers to bear costs they would not otherwise assume. We agree with Westchester.

When resolving an issue of state law in a diversity case, "we look to the final decisions of that state's highest court, and if there is no decision directly on point, then we must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005)).

Under Ohio law, courts may allocate liability among multiple insurers in certain contexts, such as when all insurers at issue provide primary coverage or when all provide second-tier excess coverage. *See generally Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 841 (Ohio 1995) (adopting the "all sums" approach for allocating environmental-pollution liability among multiple primary insurance policies). In the context of equity, equitable contribution and equitable indemnification are distinct under Ohio law. *See generally Elkins v. Access-Able, Inc.*, No. 04AP-101, 2004 Ohio App. LEXIS 3745, at ¶ 22 (Ohio Ct. App. 2004). Equitable contribution may apply when multiple actors, usually joint tortfeasors, are each held partially at fault for another's injuries; equitable indemnification, in contrast, imposes derivative liability on a party (i.e., the indemnitor) to cover the liability that an actor (i.e., the indemnitee) owes directly and in full to the injured party. *See Travelers Indem. Co. v. Trowbridge*, 321 N.E.2d 787, 789–90 (Ohio 1975) (overruled on other grounds by *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E. 2d 235 (Ohio 1995)).

Although neither this court nor the Supreme Court of Ohio has addressed the effect of a settlement on the settling insurer's equitable-indemnification liability for defense costs to a non-settling insurer, state appellate courts recognize that "indemnity arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Elkins*, 2004 Ohio App. LEXIS 3745, at ¶ 22 (quoting *Trowbridge*, 321 N.E.2d at 787). "Implied contracts of indemnity are reserved for those 'situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other.'" *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 653 N.E.2d 235, 238 (Ohio 1995) (quoting *Reynolds v. Physicians Ins. Co.*, 623 N.E.2d 30, 31 (Ohio 1993)). As the Supreme Court of Ohio

has observed, "one secondarily liable, who is forced to pay because of the refusal, or failure after demand, of the one primarily liable to discharge the obligation, has the right of indemnity from the one primarily liable." *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.*, 105 N.E.2d 568, 571–72 (Ohio 1952). Indemnity in this context is rooted in equitable principles of restitution and is not based on a statute. *Elkins*, 2004 Ohio App. LEXIS 3745, at ¶ 22; *see also Swenson v. Ewy*, No. 77AP-17, 1977 WL 200156, at*1–2 (Ohio Ct. App. May 17, 1977) (recognizing the right to equitable indemnification between *successive*, rather than joint, tortfeasors when one party bears primary liability). One claiming equitable indemnification must therefore show that, as between two liable parties, fairness requires one party to compensate the other party. *See Elkins*, 2004 Ohio App. LEXIS 3745, at ¶ 22; *Nationwide Mut. Ins. Co. v. Grossi*, No. CV 2012 12 6660, 2014 Ohio Misc. LEXIS 87, at *48 (Ohio C.P. Feb. 24, 2014).[2]

The district court did not err in concluding that equitable indemnification is the appropriate remedy. In the previous appeal, we determined that "Westchester was obligated to defend IMG when Great Divide improperly refused to do so." *IMG Worldwide*, 572 F. App'x at 411. Westchester did not owe IMG a duty to defend initially, and Great Divide should have defended IMG in the Florida litigation in which all the defense costs accumulated. *Id.*; *see also Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir.

---

[2]Courts reviewing equitable indemnification under other states' laws adopt a flexible approach when applying this remedy. *See, e.g.*, *Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 544 (3d Cir. 1988) (noting that "[c]ourts in other jurisdictions have applied a more expansive doctrine which essentially dispenses with the need to show an express or implied contractual promise of indemnity when the equities of a given situation require it"); *Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1428–30 (5th Cir. 1987) (recognizing tort-based indemnification claim); *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 302 (5th Cir. 1973) (recognizing indemnification based on implied warranty of workmanlike performance); *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pa.*, No. 15-CV-02744-LHK, 2016 U.S. Dist. LEXIS 41659, at *17–20 (N.D. Cal. Mar. 28, 2016) (citing cases approving equitable indemnification in the insurance context).

2016) (addressing law of the case). The district court was correct to determine that this case is about indemnification—as opposed to contribution—because Great Divide was obligated to defend IMG and to pay all the defense costs, without limit, for any lawsuit where any part of the damages owed by IMG would fall within the CGL policy limits. All defense costs accrued before IMG's settlement with the Florida litigants. And when Great Divide settled its obligations with IMG, that settlement never shifted the duty to defend or to pay defense costs onto Westchester. At that point, the Florida litigation was over and Westchester could do nothing about the defense costs. No party suggests that Great Divide acted in bad faith. Still, but for Great Divide's refusal to defend the Florida litigation, Westchester would have incurred no liability for the defense costs. Thus, as the district court concluded, fairness dictates an equitable adjustment to reflect the obligation owed by Great Divide as the primary insurer. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) ("Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.").

Great Divide fails to persuade that reimbursement here undermines the integrity of settlements elsewhere. The parties do not dispute that Great Divide was obligated to and should have defended IMG. And the parties do not dispute that Westchester was obligated to defend IMG only after Great Divide refused to defend IMG and later settled after the accumulation of defense costs. Westchester had no contractual obligation to reserve indemnity rights. Requiring Great Divide to carry its burden to pay IMG's defense costs here will not jeopardize the sanctity of settlements.

Having determined that a claim for equitable relief exists under Ohio law, we agree with the district court's conclusion that no genuine issue of material fact existed as to Great Divide's

equitable-indemnification liability to Westchester. Great Divide fails to establish it received no benefit from Westchester's absorbing the defense costs because those costs would have been borne by Great Divide as the primary insurer. Great Divide had the sole duty to defend the lawsuit, and its obligations to a known excess insurer did not vanish when Westchester's liability accrued as a consequence of Great Divide's inaction. To the extent that equitable indemnification requires a showing of notice and a close relationship between the indemnitor and indemnitee, the undisputed record shows that Great Divide had notice of the dispute between Westchester and IMG—both before and after trial—and had an opportunity to present its positions once Great Divide joined the lawsuit. Great Divide fails to cite caselaw requiring control of or input into the litigation strategy before notice is consummated, and we decline to countenance such a limiting principle. Great Divide's course of conduct with Westchester and efforts to intervene upon suspicion of liability belie any contention that the parties were not sufficiently related for purposes of imposing indemnity obligations. Despite the dearth of controlling decisions on the issue, the facts and circumstances of this case favor affirming the district court's grant of partial summary judgment.

**AFFIRMED**.